[No. G020908. Fourth Dist., Div. Three. Aug. 29, 2001.]

SUE GAMET et al., Plaintiffs and Appellants, v.
CHRISTOPHER BLANCHARD et al., Defendants and Respondents.

## COUNSEL

Sue Gamet, in pro. per.; and Kurt A. Stiefler for Plaintiffs and Appellants.

Martin P. Eramo for Defendant and Respondent Christopher Blanchard.

Poliquin, Goodspeed, Mulder & Skripko and Christopher Mulder for Defendants and Respondents Ron Cordova and Cordova Accountancy Corporation.

## OPINION

**MOORE, J.**—Sue Gamet and American Solutions, Inc. (ASI) appeal from a postjudgment order denying a motion to set aside a judgment of dismissal in their action against Christopher Blanchard, Ron Cordova and Cordova Accountancy Corporation (Cordova). Gamet argues it was an abuse of discretion to deny her relief, and she contends the original dismissal was unwarranted. ASI contends an order allowing its counsel to withdraw never became operative, so all subsequent orders against it were invalid. We conclude Gamet's motion to vacate the judgment against her should have been granted.

Blanchard and Cordova move to dismiss ASI's appeal as untimely filed. When the notice of appeal was filed, it was too late to appeal from the judgment itself, and ASI was not a party to the set-aside motion. Therefore, we agree ASI's appeal must be dismissed. The judgment against Gamet is reversed and remanded.

### I

### FACTS

According to the complaint, ASI was a computer sales business owned and operated by Gamet and Blanchard. Gamet held 51 percent of the stock, Blanchard 49 percent, and they were the sole directors. Blanchard was treasurer and chief financial officer, and presumably Gamet held the remaining corporate positions.

The complaint alleged, in essence, that Blanchard in various ways took money out of ASI for personal use, altered the books, locked Gamet out of the accounting system by changing the password, and neglected to have the company pay sales taxes. Causes of action were set out for breach of fiduciary duty, fraud, negligent misrepresentation, constructive fraud, conversion, negligence, and money had and received.

Cordova was ASI's accountant. The complaint alleges it failed to discover Blanchard's misdeeds and assisted in his misconduct. This formed the basis for breach of fiduciary duty and negligence claims.

Blanchard filed a cross-complaint against Gamet and ASI. In a nutshell, it said Gamet was the wrongdoer. Blanchard alleged Gamet took the corporate assets along with the books and records, held invalid meetings to remove him as director and officer, and then shut down the business. He asserted Gamet falsified the bookkeeping records to make him appear guilty of embezzlement, telling vendors and customers he stole from the company. The cross-complaint asserted these actions amounted to a breach of fiduciary duty and interference with prospective economic advantage, and it requested dissolution of the corporation.

In December 1995, counsel for Gamet and ASI, Horton, Barbaro & Reilly, moved for leave to withdraw, citing an undisclosed conflict of interest. On January 10, 1996, Gamet wrote directly to the trial judge, urging him to deny the motion. The letter came from Rapid City, South Dakota. Gamet explained she was living with her parents, having become permanently disabled after a scuba accident shattered a disc in her neck. Gamet said her lawyer wanted to withdraw so he could defend the owner of the scuba outfit in litigation by its insurer. Nothing in the record reflects on the veracity of this assertion one way or the other. In the course of the letter, Gamet also said she could not work, had no money, and could not travel without assistance.

On January 23, 1996, the trial judge granted the motion to withdraw, and simultaneously set a trial readiness conference for April 5, 1996. The order entered states: "NOTICE IS HEREBY GIVEN that on January 23, 1996 in Department 11, the Court granted the Motion to Withdraw as Plaintiff's attorney. Plaintiffs Susan Gamet's and American Solutions, Inc.'s last known address is 2201 Cherry Avenue, Rapid City, South Dakota 57701; 605[3]43-7138. Plaintiffs are now in propria persona and may wish to seek legal counsel and the failure to take appropriate action may result in serious legal consequences. This order shall not be effective until proof of its service is filed, showing service upon the client and all other parties who have appeared in this action. IT IS SO ORDERED. DATED: January 23, 1995 [sic]."

No proof of service appears in the record, nor could we find any in our independent review of the superior court file.

The same day, the trial judge wrote to Gamet at her Rapid City address, telling her the motion to withdraw had been granted. He advised her the case was set for trial on May 6, 1996, and a trial readiness conference was scheduled for April 5, 1996, at 8:30 a.m. The letter ended with the admonition "you will need to have counsel by that time or be prepared to go forward by yourself."

Blanchard and Cordova pressed ahead with three discovery motions. On February 6, 1996, the trial court heard Cordova's motion to compel Gamet's deposition. Gamet did not appear and had not filed opposition, and Cordova told the judge she had agreed to a date later in the month. At the hearing, the judge stated: "I'm calling this case because I thought we'd chat about how we might deal with it logistically. I am somewhat sympathetic about Ms. Gamet's situation because I believe her counsel, not too long ago, departed, so I'm in a position to jam her . . . I'd like to keep the heat on . . . to see what she is going to do." The upshot was an order that Gamet appear for her deposition on February 26, 1996. Gamet never showed up.

This led to Cordova's February 26, 1996 ex parte motion to continue the discovery cutoff and trial. The trial judge postponed decision, and set the application for hearing to follow the trial readiness conference. On March 12, 1996, the court heard a third motion, Blanchard's request to compel ASI to answer interrogatories. The judge granted the motion, ordered ASI to supply answers within 30 days, and sanctioned both the company and former counsel $250.

The trial readiness conference was held on April 5, 1996, but neither Gamet nor ASI appeared. The trial judge issued an order to show cause why the case should not be dismissed, returnable on April 30, 1996. The order was served on Sue Gamet and the only attorney who represented both the corporation and Gamet in the cross-complaint, Leo J. Moriarty. Moriarty had been associated as attorney of record by both plaintiffs' counsel, Horton, Barbaro & Reilly. When the Horton, Barbaro & Reilly firm was relieved the previous January, neither the moving papers nor the court's order mentioned Moriarty. The order to show cause was not served on the corporation or Horton, Barbaro & Reilly.

At the April 30 hearing on the dismissal motion, Gamet was represented by counsel who made a special appearance. There is no court reporter's

record of the proceedings.[1] Whatever happened, the result was a minute order recording that the judge struck the answer to the cross-complaint, vacated the trial date and awarded costs to Blanchard and Cordova. Inexplicably, the subsequent judgment recites an entirely different result from the April 30 dismissal hearing. It does not even mention the striking of the answer to the cross-complaint. Instead, it states the complaint was dismissed with prejudice.

Gamet apparently learned of the decision shortly thereafter. She wrote to the trial judge on May 2, 1996, asking him to reconsider. Her rambling letter claimed ignorance of the discovery sanction against ASI and the missed dates. Gamet put the blame on counsel, saying she was not told of the upcoming dates and the files were in disarray. She said she needed more time to find new counsel, citing an accident that had left her completely disabled and family needs. She explained her 35-year-old brother had recently died following a stroke and five operations, leaving two small children. This letter fell on deaf ears. The complaint was dismissed with prejudice by judgment filed May 10, 1996.

On November 5, 1996, Gamet moved to vacate the dismissal on the ground of inadvertence, excusable neglect or surprise.[2] (Code Civ. Proc., § 473, subd. (b).) The motion states, "plaintiff is under the impression the true facts regarding plaintiff's inability to prosecute the case was not presented to the court," and "plaintiff seeks to have the true facts represented to the court regarding her inability to prosecute the case. . . ." A supporting declaration essentially repeats what Gamet told the judge in her earlier letters.

Gamet argued the motion. She claimed to have a new attorney ready to handle the case, and asked about the status of the cross-complaint, noting it had not been dismissed. The trial judge responded, "I don't know. I thought that was over with, too," and denied relief, without explanation.[3]

Notice of appeal was filed by Gamet for herself and ASI on December 20, 1996. After appellant's opening brief was filed, we notified ASI that its appeal would be dismissed unless it retained counsel, and it did so.

---

[1] One difficulty in ascertaining the facts is the unexplained lack of use of a court reporter with the exception of two very short hearings.

[2] In her brief, Gamet states she retained an attorney to file the motion on behalf of herself and ASI, but he left off the corporation and "deceptively" filed it in her name rather than under his own.

[3] The record from November 5, 1996, is not clear. It appears there were two hearings of the Code of Civil Procedure section 473 motion on that day. The first occurred without Gamet and without a court reporter. Apparently Gamet, who traveled from South Dakota, arrived late. Outside the presence of the other parties, the court nevertheless heard from Gamet, this time with a court reporter.

## II

### DISCUSSION

*Sue Gamet*

The ruling on a motion to vacate will only be disturbed on appeal where there is a clear showing of abuse of discretion and a manifest miscarriage of justice. (*In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 118 [95 Cal.Rptr.2d 113].) The test for abuse of discretion is "whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478-479 [243 Cal.Rptr. 902, 749 P.2d 339].)

The trial court's discretion is not absolute: "The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia*, but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." (*Bailey v. Taaffe* (1866) 29 Cal. 422, 424.) An exercise of discretion is subject to reversal on appeal where no reasonable basis for the action is shown. (*Common Cause v. Stirling* (1983) 147 Cal.App.3d 518, 522 [195 Cal.Rptr. 163].)

We conclude there was an abuse of discretion because of a combination of events. Nowhere in the record is there any indication the trial judge gave any consideration to Gamet's alleged personal and family traumas. The judge's comments that he could "jam" Gamet and that he wanted to "keep the heat on,"[4] when combined with the unexplained judgment dismissing the action shortly thereafter, seem arbitrary and create the appearance of substantial unfairness. While keeping cases moving through the court system and preventing unreasonable delay is certainly an important goal, it is a goal meant to serve justice by resolving disputes as speedily as possible. When disposing of cases becomes an end in itself, justice and fairness can easily fall by the wayside, and it appears that is what happened here.

Gamet received information that was plainly inaccurate. Had she known at the time Horton, Barbaro & Reilly was relieved as counsel and that ASI must immediately retain another attorney, this case might have proceeded on

---

[4]We are mindful they could have been the ramblings of a busy trial judge trying to keep control of his calendar, with no rancor intended.

a much more level playing field. She was not so advised, however, despite the requirements of California Rules of Court, rule 376(d).[5] She was justifiably confused by the judgment dismissing her complaint, which failed to address the cross-complaint, was inconsistent with the prior minute order, and continued to list Horton, Barbaro & Reilly and Leo Moriarty as counsel. Based on the confusing paperwork, even a licensed attorney stepping into this case would have had trouble figuring out exactly what had happened.

■ We further note that in propria persona litigants are not entitled to special exemptions from the California Rules of Court or Code of Civil Procedure. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975 [35 Cal.Rptr.2d 669, 884 P.2d 126].) They are, however, entitled to treatment equal to that of a represented party. Trial judges must acknowledge that in propria persona litigants often do not have an attorney's level of knowledge about the legal system and are more prone to misunderstanding the court's requirements. When all parties are represented, the judge can depend on the adversary system to keep everyone on the straight and narrow. When one party is represented and the other is not, the lawyer, in his or her own client's interests, does not wish to educate the in propria persona litigant. The judge should monitor to ensure the in propria persona litigant is not inadvertently misled, either by the represented party or by the court. While attorneys and judges commonly speak (and often write) in legal shorthand, when an in propria persona litigant is involved, special care should be used to make sure that verbal instructions given in court and written notices are clear and understandable by a layperson. This is the essence of equal and fair treatment, and it is not only important to serve the ends of justice, but to maintain public confidence in the judicial system.

■ The confusing, indeed misleading, nature of the various orders and communications that Gamet received from the trial court is particularly

---

[5]Until this court advised appellants the corporation's appeal would be dismissed because it had to appear through an attorney, no one advised the corporation it could not represent itself. In California a corporation may not represent itself, except in a small claims proceeding. This prohibition stems from the notion a corporate representative who would likely appear on behalf of the corporation would be engaged in the unlicensed practice of law. (*Merco Construction Engineers, Inc. v. Municipal Court* (1978) 21 Cal.3d 724 [147 Cal.Rptr. 631, 581 P.2d 636].) The ban on corporate self-representation does not prevent a court from granting a motion to withdraw as attorney of record, even if it leaves the corporation without representation. Such an order puts pressure on the corporation to obtain new counsel, or risk forfeiting important rights through nonrepresentation. (*Ferruzzo v. Superior Court* (1980) 104 Cal.App.3d 501, 504 [163 Cal.Rptr. 573].) It is the duty of the trial judge to advise the representative of the corporation of the necessity to be represented by an attorney. (*Van Gundy v. Camelot Resorts, Inc.* (1983) 152 Cal.App.3d Supp. 29, 31 [199 Cal.Rptr. 771].) Yet every opportunity to so advise was missed by the court in this case. As already mentioned, the rule of court requiring such notice was not followed, the January 23, 1996 order relieving counsel implied the corporation could represent itself, and the letter sent by the judge to Gamet that same day did not mention the corporation.

important in light of Gamet's (involuntary) in propria persona status. As noted above, in propria persona litigants are not entitled to any special treatment from the courts. (*Rappleyea v. Campbell, supra,* 8 Cal.4th 975.) But that doesn't mean trial judges should be wholly indifferent to their lack of formal legal training. Clarity is important when parties are represented by counsel. How much more important is it when one party may not be familiar with the legal shorthand which is so often bandied around the courtroom or put into minute orders?

There is no reason that a judge cannot take affirmative steps—for example, spending a few minutes editing a letter or minute order from the court—to make sure any communication from the court is clear and understandable, and does not require translation into normal-speak. Judges are charged with ascertaining the truth, not just playing the referee. (See *Guardianship of Simpson* (1998) 67 Cal.App.4th 914 [79 Cal.Rptr.2d 389].) A lawsuit is not a game, where the party with the cleverest lawyer prevails regardless of the merits. (*Adams v. Murakami* (1991) 54 Cal.3d 105 [284 Cal.Rptr. 318, 813 P.2d 1348].) Judges should recognize that an in propria persona litigant may be prone to misunderstanding court requirements or orders—that happens enough with lawyers—and take at least some care to assure their orders are plain and understandable. Unfortunately, the careless use of jargon may have the effect, as in the case before us, of misleading an in propria persona litigant. The ultimate result is not only a miscarriage of justice, but the undermining of confidence in the judicial system.

Conventional wisdom tells us that we can learn a great deal from watching youngsters. Sometimes on the playground or the kickball field, things simply go so far awry that the only fair resolution is a "do-over." This case is the judicial equivalent. Events diverged so far from any reasonable person's idea of a fair day in court that a "do-over" is surely warranted. Given all of the facts present, dismissing Gamet's case resulted in a manifest miscarriage of justice. Refusing to vacate that judgment was an abuse of discretion.

*American Solutions, Inc.*

■ From a totality of ASI's arguments, it seems to be crying foul because of a series of procedural irregularities that amount to a lack of due process. We agree the system did not work as it should have in providing ASI with notice and an opportunity to be heard. The protection of the due process clause extends to all legal "persons," including corporations. (*Pembina Consol. Silver Mining & Milling Co. v. Pennsylvania* (1888) 125 U.S. 181, 188-189 [8 S.Ct. 737, 740-741, 31 L.Ed. 650].)

The language of the January 23, 1996 order relieving counsel mandated the filing of a proof of service on the clients before it had any effect. As no

such proof of service is in the record or found in an independent search of the superior court file, it would appear the corporation's counsel, Horton, Barbaro & Reilly, was never actually relieved because the order never became operative. Yet no notice of any of the subsequent proceedings was given by the court or the parties to that firm or to Leo J. Moriarty.[6] (Code Civ. Proc., § 1015.) Even assuming the attorneys had been relieved, however, the notices served on the corporation were all faulty. While Gamet wrote to the judge, telling him she was living with her parents in South Dakota, she did not mention the corporation's address. Both the court and counsel sent post-January 23, 1996 notices to the corporation at Sue Gamet's South Dakota address, despite a notice of change of address filed the previous October 31 on the corporation's behalf. The address was in Garden Grove, California.

The fundamentals of due process include notice and an opportunity to be heard. The order relieving its counsel never became operative. Notice of all court proceedings subsequent to the motion to be relieved was inadequate. Because ASI did not receive adequate notices, the judgment against ASI is void on the face of the record. Even so, as a procedural point, ASI has yet to properly attack the judgment. The notice of appeal was filed more than 180 days after the date of entry of judgment and so any appeal from the judgment itself would be untimely. (Cal. Rules of Court, rule 2(a).) We observe that ASI was not a party to the set-aside motion, so ASI has no standing to appeal from the order denying that motion. Nonetheless, ASI is at liberty to file a set-aside motion of its own. A judgment entered without notice is void and can be attacked at any time. (See *Morgan v. Clapp* (1929) 207 Cal. 221, 224 [277 P. 490]; *Lovato v. Santa Fe Internat. Corp.* (1984) 151 Cal.App.3d 549, 554 [198 Cal.Rptr. 838].)

## III

### DISPOSITION

Blanchard and Cordova have filed two requests for judicial notice pertaining to the corporate status of ASI. Those requests are granted. This court will take notice of the document attached to the request for judicial notice filed with this court on February 8, 1999, and of the Secretary of State's domestic

---

[6]Left unexplained is the lack of any mention in the order relieving counsel of one of the corporation's attorneys, Leo J. Moriarty. Moriarty was associated as counsel of record by Horton, Barbaro & Reilly, but was the corporation's *only* attorney on the cross-complaint. The record contains neither a notice of disassociation of attorneys from Moriarty on the complaint nor an order relieving Moriarty as the corporation's attorney of record on the cross-complaint. Yet after Horton, Barbaro & Reilly was ordered relieved, Moriarty virtually disappeared from the case.

corporation certificate of filing and suspension filed with this court on May 8, 2001.

We must grant the Blanchard and Cordova motion to dismiss ASI's appeal as untimely filed. The motion to dismiss is granted, without prejudice to ASI's appearing through an attorney in the trial court. If the void judgment is not set aside, the corporation will then have its right to an appeal.

As to Gamet, the trial judge abused his discretion when he denied a request to set aside the dismissal of Gamet's action. The order appealed from is reversed and her case is remanded to the trial court for further proceedings. Gamet is entitled to her costs.

Sills, P. J., concurred.

**BEDSWORTH, J.**—I dissent.

Like my colleagues, I sympathize with Sue Gamet's misfortune. And I regret the intemperate choice of words of the trial judge. Unlike my colleagues, I cannot find "there was an abuse of discretion because of a combination of events," and I cannot find authority for reversal because of "the appearance of substantial unfairness." And while reliance by the majority upon the rules of kickball will ordinarily make opinions more intelligible to me, I fear that it will not provide much guidance to trial judges trying to discern from this opinion just how they must handle an in propria persona litigant.

My colleagues recognize in one sentence the hoary but still vigorous rule that "pro per litigants are not entitled to any special treatment from the courts," but devote several paragraphs to setting out the kinds of special treatment trial judges will be obliged to accord them under this opinion.

In propria persona litigants have become more common in recent years and seem destined to become a much larger portion of the trial court docket than they have been in the past. It may be time to reassess our case law regarding them. And while I agree with much that is said in the majority opinion, and might be prepared to give a second look to our rules regarding in propria persona litigants, I think an ad hoc reversal which tells trial judges to treat in propria persona litigants the same as they treat represented litigants—only different—accomplishes little in the way of addressing the problem and does a disservice to the people who must deal with in propria persona litigants every day.

As near as I can determine, the majority orders a "do-over" (their term) in this case because appellant received confusing or misleading information

from the trial court. But appellant makes no such claim. And probably with good reason. After all, there is no doubt that she knew of the trial readiness conference, appeared (through counsel) at the show cause hearing, and knew unmistakably that the complaint had been dismissed within days after the fact. Indeed, she wrote to the trial judge to ask for reconsideration even before notice of entry of judgment was served.[1]

As to the trial judge's failure to explain his reasons for dismissal of the action, this is another instance in which I wish my trial colleague had proceeded differently, but the oversight is not grounds for reversal. A judgment of a lower court is presumed to be correct, and error must be affirmatively shown. (*Jacques Interiors v. Petrak* (1987) 188 Cal.App.3d 1363, 1369 [234 Cal.Rptr. 44].) In this case, nothing has been shown except ill-chosen remarks, which the majority purports to recognize as possibly no more than venting by "a busy trial judge trying to keep control of his calendar, with no rancor intended." (Maj. opn., *ante*, fn. 4.) I cannot find in that a basis for reversal.

I

As to Gamet, the only issue before us is whether the trial judge erred in denying the motion to vacate. I cannot agree there was an abuse of discretion.

Gamet never appealed from the order dismissing the complaint, so we have no power to review it. A notice of appeal filed after denial of a motion to vacate a judgment confers no jurisdiction to review the merits of the judgment. It presents only the propriety of the order refusing to set aside the judgment. (*In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 109, 117 [95 Cal.Rptr.2d 113].)

Even if members of this court would have reached a different result, the trial judge's decision was within the bounds of reason. Despite Gamet's problems, it was reasonable to infer none prevented her from appearing for the trial readiness conference, or at least asking that it be continued to a later date. Gamet never said she was unable to travel, she had agreed to travel to California for her deposition, and she made the trip to argue the motion to vacate. The majority's claim that she was unaware of the trial readiness

---

[1]In that letter she asserts, "I would have been at this conference myself but my family needed me back in South Dakota since my mom needed to be out of town on a matter that couldn't be rescheduled and my father is really having problems with the loss of his only son." This is not the complaint of someone who didn't know about the conference, but rather the explanation of someone who decided her mother's family business was more important.

conference date is unconvincing, since the trial judge specifically told her it was set for April 5, 1996, when he wrote to her after granting counsel's motion to withdraw. And Gamet's willingness to communicate directly with the judge quite reasonably raises the question why she did not notify the judge of her problems *prior* to the hearing, or ask for a postponement. The upshot is that I cannot say the trial judge abused his discretion when he declined to vacate the judgment.

## II

Turning to ASI, my colleagues grant it relief in the guise of dismissing its appeal. They invite ASI to move the trial court to set aside the May 1996 judgment, on the ground that a void judgment may be vacated at any time. And, if I take their meaning correctly, they imply that should the trial judge deny the motion, they will reverse him on appeal.

I think these suggestions unwise. Beyond that, neither the record nor the law support the conclusion the judgment is void.

ASI certainly knew of the order allowing counsel to withdraw because Gamet knew. After all, suit on behalf of ASI was brought by Gamet, the corporation's majority shareholder, one of its two directors, and apparently its president as well. In fact and in substance, ASI had notice of the order of withdrawal. There is no denying that the withdrawal order did not become operative by its terms, never having been served as required. The question I think this presents is whether we should focus on formal defects even when the substance is there. And I think the answer should be "no."

The authorities cited by the majority would not support finding this judgment void. *Morgan v. Clapp* (1929) 207 Cal. 221 [277 P. 490] found the judgment before it valid. In *Lovato v. Santa Fe Internat. Corp.* (1984) 151 Cal.App.3d 549 [198 Cal.Rptr. 838], the court set aside a default judgment where a corporation had neither actual nor constructive notice of the hearing at which the judgment was entered. Notably, there the corporation filed a timely motion to set aside the default *and* a timely notice of appeal. Here, ASI had actual notice of the dismissal order, it did not move to set it aside, and it did not file a timely notice of appeal. I would dismiss the appeal of ASI as untimely and go no further.

I can find no basis for a reversal in this case other than my own chagrin that the trial judge inappropriately expressed his desire to force a reluctant

litigant into court. And since the Legislature has inexplicably failed to recognize my disapproval as a grounds for reversal, I would affirm the judgment.

Respondents' petition for review by the Supreme Court was denied November 14, 2001.