Filed 12/31/13  Certified for publication 1/29/14 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ATOM PETROSYAN, | B244274 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. LC094433) |
| v. | |
| PRINCE CORPORATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Frank J. Johnson, Judge.  Reversed and remanded.

Steptoe & Johnson and Rebecca Edelson for Appellant.

No appearance by Respondent.

_____

Atom Petrosyan appeals from the judgment entered after the trial court granted a second mistrial and dismissed without prejudice his appeal of a Labor Commission unpaid wages award. We reverse because the second mistrial should not have been granted and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

The Labor Commissioner awarded Atom Petrosyan almost $12,700 for unpaid regular and overtime wages from his former employer, Prince Corporation, dba Sherman Car Wash. Petrosyan believed he was owed a total of more than $54,000 and appealed by way of a trial de novo in the superior court. (Lab. Code, § 98.2.)

Petrosyan represented himself at trial through an Armenian language interpreter. In advance of the first trial, Petrosyan told Prince's lawyer that he intended to introduce evidence that Prince had settled with nine other car wash employees who had sued for unpaid wages. Defense counsel said the evidence was more prejudicial than probative and asked the trial court to exclude it. The trial court asked Petrosyan if he intended to admit evidence of "that prior lawsuit?" Petrosyan said Prince had paid $225,000 to settle the dispute. The trial court asked again whether Petrosyan would try to "tell the jury about that lawsuit . . . ?"

When Petrosyan answered yes, the court asked why that evidence was relevant. Petrosyan answered, "Because I used to work with those employees who make the lawsuits and he promised to give me the car wash after five years of working there. That's why I didn't go on the lawsuit with them at the time." The trial court told Petrosyan that his action was for unpaid wages only, not for breach of an agreement to obtain the car wash. It granted the defense motion in limine, stating: "From what you've been able to tell me so far, I don't see any link between that lawsuit and this lawsuit. So you are not allowed to tell the jury about that lawsuit in this case."

Petrosyan began his opening statement by talking about the harsh conditions under which he supposedly worked. Defense counsel objected when he said "there were many workers as I was in the same condition. And some of those --." As defense counsel

2

continued to object and the translator asked to be allowed to translate, Petrosyan went on to say, "[a]nd some of those workers that worked there from 2006 to 2008 filed the claim . . . . [¶] . . . – for $225,000."

Defense counsel objected that the statement was prejudicial. After having the jury leave the courtroom, the trial court had Petrosyan confirm that he had been directed not to mention that lawsuit. The following colloquy occurred:

"THE COURT: So what makes you think that you can bring that up to this jury now?

"MR. PETROSYAN: Without those prior cases, I can't present my present case.

"THE COURT: Mr. Petrosyan, I run this court, not you. If I tell you it doesn't come in, it doesn't come in."

After Petrosyan apologized, the court turned to defense counsel and said, "I think you have grounds for mistrial." Defense counsel then moved for a mistrial, which the trial court granted, warning Petrosyan that "[i]f this happens again, I'm going to dismiss your case."

A second trial began in front of a new jury on August 21, 2012. Before jury selection began, defense counsel asked to renew his motion in limine "to preclude Mr. Petrosyan from introducing any evidence relating to any prior trials or settlements regarding my client . . . ." The trial court granted that motion, instructing Petrosyan "just like you did in the last trial, that you may not mention to this jury any lawsuit involving this defendant or this corporation. The last time we did this you stood up and told them, in spite of my instructions, about a lawsuit which had happened previously and which had been settled. You are not allowed to do that." Petrosyan said he understood what he had just been told.

Petrosyan gave a brief opening statement which, after some quick reminders to stay on point, consisted of his statement that he often worked without breaks or full compensation. Defense counsel gave his opening statement, claiming that Petrosyan had been properly compensated for his work, but was fired because he opened up a competing auto detailing business and took items from Prince to use in his own business.

3

Petrosyan then began to testify in narrative form. Petrosyan said he was ordered to break open car door locks, prompting defense counsel to object that the statements lacked foundation and relevance. The trial court cautioned Petrosyan that those statements had nothing to do with his wage claim. Petrosyan testified about not being paid for overtime or given required lunch breaks, but then said he was fired "because in 2008 he made me to go somewhere and give false statements and sign false papers."

This drew another defense objection for misconduct and a request by defense counsel to approach the bench. Instead of ruling, the trial court told Petrosyan once more that he was introducing evidence that had no bearing on his wage and hours claims.

Petrosyan testified that he was fired without cause, and that his employer made false statements to the Employment Development Department after Petrosyan filed for unemployment benefits. This prompted another reminder from the trial court that certain evidence had no bearing on the case, "The jury's going to make the decision, not the EDD. So, you need to tell them what wages you think you are owed by this defendant." Petrosyan replied that he "applied to the Labor Board." The trial court said that the only relevant issue was the amount he claimed he was owed, stating, "You need to tell the jury how much and why you are owed that much." Petrosyan answered, "Labor Board paid me $12,000."

Defense counsel objected that the statement was irrelevant, more prejudicial than probative, amounted to misconduct, and asked to approach the bench. The trial court excused the jurors before allowing defense counsel to resume. Defense counsel said, "Your Honor, the motion in limine was for prior cases against my client. Perhaps we should have included the Labor Board award as well. That comment that he was awarded $12,000 by the Labor Board is so prejudicial to my client that cannot now get a fair trial. He has to prove his evidence as to why he's owed $12,000 and he hasn't done that. He hasn't submitted via judicial notice that award, and I believe it would not be admissible anyway. [¶] The motion in limine covered prior settlements or verdicts. I believe that that labor board award should be encompassed by that motion in limine."

4

The court said, "Of course it was. I take your point implicitly. It's absolutely correct." The trial court then scolded Petrosyan for once more violating its instructions. "Just like the last time when you brought up a prior lawsuit a mistrial was declared because of your misconduct because I told you not to do that, you've now done exactly the same thing in this case, only now you're referring to the Labor Board decision. I don't know how many – I've told you maybe three times in front of this jury to just talk about the hours and wages that you are owed allegedly. I told you not to discuss any prior lawsuits or settlements or anything of that sort involving yourself and this defendant. And, once again, directly contradicted my orders."

Petrosyan said he "understood that I have no right to talk about anybody else's case. Do I not have a right to talk about my own case? I appealed because of the false signatures and the tests directly connected with my case. The main thing that I got paid for one year was that he made me to put the false signatures and the statement, and I got paid for one year. Please let me to talk about that because that's the only way that the jury can hear and understand my case."

The trial court told Petrosyan that because he had no legal training, "it's very difficult, and it's not a criticism that's just a fact; you don't know what you're doing. So, you keep making these mistakes and you [*sic*] making it very, very difficult for the court, because you keep bringing up things you've been instructed not to talk about. [¶] Now, in some areas of life being stubborn is a good thing and can lead to success. But when you stubbornly refuse to obey the court's orders, that's not a good thing and it makes it very difficult for you to get a fair trial or any trial at all."

Petrosyan replied: "I'm sorry, I didn't understand that I have no right – that I have no right to bring the points that in my understanding will help the jury to make a right decision? If you insist, I agree not to tell everything that in my opinion will help my case." The trial court asked defense counsel for his specific request. Defense counsel asked for a mistrial, not just based on mentioning the Labor Board award but for the personal attacks on his clients honesty and integrity, which counsel said had no basis, at least from looking at Petrosyan's proposed trial exhibits.

5

The trial court said: "I believe this is prejudicial to your client. And I believe you are fully justified in asking for a mistrial. This is the second mistrial we've declared in as many attempts. It is frankly a question on whether we should allow him an opportunity for a third trial. I've been more than patient. [¶] What would you like to tell me, sir? At a minimum the court is planning to declare another mistrial and I'm trying to decide whether or not to dismiss the case at this point."

Petrosyan said he did not know that he "can't talk regarding my . . . personal case, and I am sorry about that, but I really would like to continue." The trial court declared a mistrial, and defense counsel asked for "terminating sanctions or dismissal."[1] Pointing to the waste of time, money, and judicial resources, the trial court said, "I don't see why I should have to put up with this. The case is dismissed due to the misconduct of the plaintiff in these proceedings." Although the minute order stated merely that the action had been dismissed, the trial court later entered a nunc pro tunc order stating that the dismissal had been with prejudice.

On appeal Petrosyan contends that the trial court erred by granting both mistrial motions. He alternatively contends that if the second mistrial motion was properly granted, the court erred by dismissing his action with prejudice.[2] As set forth below, we hold that the trial court erred by granting a mistrial at the start of the second trial. We therefore do not reach the other issues raised on appeal.

---

[1]     Although Prince raised as a companion ground for mistrial statements by Petrosyan concerning allegedly dishonest conduct by Prince, the trial court's oral comments did not adopt that ground, and its minute order states that mistrial was granted because of Petrosyan's reference to "a prior arbitration award." We therefore presume that the trial court granted a mistrial due only to the Labor Board award reference. Were we to reach the issue, however, it is arguable that defense counsel's opening statement accusation about Petrosyan being fired for misconduct opened the door to contrary evidence by Petrosyan to show that he was not fired for cause.

[2]     Prince Corporation did not file a respondent's brief. As a result, we may accept as true the statement of facts in the appellant's opening brief. Prince's failure to file a respondent's brief does not mandate automatic reversal, however. Instead, we examine the record and reverse only if prejudicial error is found. (Cal. Rules of Court, rule 8.220(a)(b); *Estate of Supeck* (1990) 225 Cal.App.3d 360, 365.)

# DISCUSSION

A mistrial may be declared when an error too serious to be corrected has occurred. Such error can be based on a litigant's misconduct. (*Abbott v. Mandiola* (1999) 70 Cal.App.4th 676, 682.) Though the standard of review from a mistrial order is abuse of discretion, our Supreme Court has a "substantive preference against them" that restricts the deferential abuse of standard to orders denying mistrials. (*Blumenthal v. Superior Court* (2006) 137 Cal.App.4th 672, 678-679.) "A trial court should *grant* a mistrial *only* when a party's chances of receiving a fair trial have been irreparably damaged." (*Id.* at p. 679.)

Petrosyan contends the trial court erred by granting the second mistrial because his comment regarding the Labor Board award had not violated the in limine order and because even if it had, a curative admonition was all that was required. We agree on both points.

Although self-represented litigants are not entitled to special treatment, they are entitled to the same treatment as a represented party. This case demonstrates the challenges presented to a conscientious trial judge when faced with self-represented litigants who simply do not understand the basic rules of civil litigation. "Trial judges must acknowledge that in propria persona litigants often do not have an attorney's level of knowledge about the legal system and are more prone to misunderstanding the court's requirements." (*Gamet v. Blanchard* (2001) 91 Cal.App.4th 1276, 1284 (*Gamet*).) When one party has counsel and the other does not, the trial court "should monitor to ensure the in propria persona litigant is not inadvertently misled, either by the represented party or by the court. . . . [S]pecial care should be used to make sure that verbal instructions given in court and written notices are clear and understandable by a layperson. This is the essence of equal and fair treatment, and it is not only important to serve the ends of justice, but to maintain public confidence in the judicial system." (*Ibid.* [dismissal of a complaint reversed where the plaintiff informed the court she was now living out of state following a disabling accident, was not informed that the lawyer for her corporate co-

7

plaintiff had been relieved and that new counsel was required, and therefore failed to show up for deposition or court appearances].)[3]

The confusing and misleading orders and communications the plaintiff in *Gamet* received from the court were particularly important because she represented herself. Even though self-represented litigants get no special treatment, trial judges should not be "wholly indifferent to their lack of formal training. Clarity is important when parties are represented by counsel. How much more important is it when one party may not be familiar with the legal shorthand which is so often bandied around the courtroom or put into minute orders?" (*Gamet, supra,* 91 Cal.App.4th at pp. 1285.)

We believe these principles apply to the in limine orders at issue here, especially when the self-represented litigant is not a native speaker of the English language and depends on an interpreter. The trial court granted the second mistrial based on Petrosyan's testimony – in response to the trial court's direction to specify how much he was owed – that the Labor Board had awarded him $12,000. As we read the record, the in limine order at the second trial did not include the Labor Board's award. At a minimum, given Petrosyan's language difficulties and self-representation, we believe that order was ambiguous on this point.

The starting point for our analysis is the in limine order from the first mistrial, when Prince moved to exclude evidence of its settlement with several other car wash employees for unpaid wages. Petrosyan said he wanted to introduce evidence of that $225,000 settlement but the court told him he was "not allowed to tell the jury about *that lawsuit* in this case." (Italics added.)

When the second trial began, defense counsel said it was renewing its previous motion in limine, albeit in more expansive language relating to "prior trials or settlements" regarding Prince. The trial court then told Petrosyan he could not mention

---

[3] Canons of Judicial Ethics contemplate that judges may take reasonable steps to enable a self-represented litigant to be heard. "For example, when a litigant is self-represented, a judge has the discretion to take reasonable steps, appropriate under the circumstances and consistent with the law and the canons, to enable the litigant to be heard." (California Code of Judicial Ethics, Adv. Com. com. 3B(8).)

any "*lawsuit*" involving Prince, "*just like you did in the last trial.*" "Just like in the last trial" concerned Prince's $225,000 settlement with several employees. We do not believe this encompassed a Labor Board wage claim award, at least not with the clarity required where a self-represented, non-English speaking litigant is concerned.

Even Prince recognized this, telling the court that it wished the Labor Board award had been included in its motion in limine, implicitly recognizing that it had not. Although the trial court believed it had been included, we disagree for the reasons set forth above. Petrosyan complained about the lack of clarity in the trial court's order, stating he understood he could not talk about someone else's case against Prince, but he believed he had the right to talk about his own case. Due to the ambiguity in the trial court's order, we hold that Petrosyan did not violate that order.

We alternatively conclude that even if misconduct occurred, Prince's chance of receiving a fair trial had not been irreparably damaged. The irreparable damage requirement is important because it dovetails with the reason why mistrials are presumptively disfavored: they necessarily result in a waste of resources – tax dollars, court time, juror time, and lawyer's fees – in order to serve a higher good: preventing wasted resources at the appellate level where the error would be corrected by vacating the judgment and sending the case back for a retrial anyway. (*Blumenthal v. Superior Court, supra,* 137 Cal.App.4th at p. 679.) We see no reason why an admonition to the jury to disregard the reference and directing it to determine the amount of unpaid wages owed, if any, based solely on the evidence presented, would not have cured any harm done by Petrosyan's statement. We presume the jury would have followed such direction. We reverse on this basis also.

9

## DISPOSITION

The judgment of dismissal is reversed and the matter is remanded for further proceedings.  Appellant shall recover his appellate costs.


RUBIN, ACTING P. J.

WE CONCUR:


FLIER, J.


GRIMES, J.

10

Filed 1/29/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ATOM PETROSYAN, | B244274 |
| Plaintiff and Appellant, | (Los Angeles County<br> Super. Ct. No. LC094433) |
| v. | |
| PRINCE CORPORATION, | **ORDER** |
| Defendant and Respondent. | |

THE COURT:

     IT IS HEREBY ORDERED that the opinion filed in the above matter on December 31, 2013, is certified for publication with no change in judgment.

_____

RUBIN, ACTING P. J.            FLIER, J.            GRIMES, J.