Filed 7/29/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| EUGENE STECIW et al., | |
| Plaintiffs and Appellants, | G057375 |
| v. | (Super. Ct. No. 30-2014-00732306) |
| PETRA GEOSCIENCES, INC., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Derek W. Hunt, Judge. Reversed and remanded.

Tomassian, Throckmorton & Inouye, Serge Tomassian, and Michael S. Inouye for Plaintiffs and Appellants.

Andrews Lagasse Branch + Bell, Traci S. Lagasse, and James F. Hayes for Defendant and Respondent.

\*          \*          \*

The trial court dismissed plaintiffs' complaint against defendant Petra Geosciences, Inc. (Petra) because plaintiffs had not served Petra with a summons and complaint within three years, as required by Code of Civil Procedure section 583.210.[1] Plaintiffs, ignorant of Petra's identity, initially named it as a Doe defendant. After discovering Petra's identity shortly before the three-year deadline, and after preparing a certificate of merit, plaintiffs amended their complaint and served Petra. But by that time three years and 38 days had elapsed. Plaintiffs appealed the subsequent dismissal, contending the court erred in computing the three-year period.

In computing the three years, section 583.240, subdivision (b), excludes any time in which "[t]he prosecution of the action or proceedings in the action was stayed and the stay affected service." Here, the trial court had stayed the matter for nine months while the parties engaged in a prelitigation alternative dispute resolution procedure mandated by a contract. The court did not exclude that period from the three-year calculation. The question is, did that stay affect service, thereby extending the time to serve Petra? We conclude it likely did, but that remand is necessary for further findings.

Our reasoning is simple. One cannot serve an unknown party. If discovery was reasonably necessary to identify Petra, then the stay, which prevented discovery, by extension affected service. We will remand for the court to decide in the first instance whether other reasonable means of identifying Petra existed.

FACTS

On July 2, 2014, plaintiffs filed suit against defendants Shappell Industries and Toll Brothers, Inc. (the Developer) for construction defects arising out of the

---

[1] All statutory references are to the Code of Civil Procedure.

2

construction of two residences in a community called San Joaquin Hills.[2] The complaint also named Doe defendants. It included two causes of action against unnamed engineers, which were alleged against Does 101-125.

In October 2014, the Developer cross-complained against various sub-contractors, though not against Petra, the respondent here.

In December 2014, the Developer brought a motion to dismiss plaintiffs' complaint, or, in the alternative, stay the proceedings to comply with a contractual prelitigation dispute resolution process spelled out in the purchase agreements for plaintiffs' homes. The relevant contractual provision required the homeowners to give the Developer notice and an opportunity to cure any alleged defects *prior* to filing a lawsuit. "Buyer shall not pursue any other remedies available to it under this Agreement, at law or otherwise, including without limitation the filing of any lawsuit or action, until Seller has had the reasonable opportunity to inspect and cure the alleged Defect." During the period of inspection and cure, the parties agreed that the statute of limitations would be tolled for up to 90 days.

On May 20, 2015, the court granted the alternative relief, ordering as follows: "[T]his action is ordered stayed pending compliance with the non-adversarial pre-litigation procedures set forth in Plaintiff's purchase agreements." The court ended the stay more than nine months later, on February 29, 2016, concluding the Developer "had its opportunity to inspect and repair the defects noticed by Plaintiffs, but has chosen not to."

Shortly afterward, the Developer brought a motion to compel a judicial reference, as contemplated in the purchase agreements, as well as in the subcontracts with the various cross-defendants. On May 3, 2016, the court granted the motion and stayed the action pending the outcome of the judicial reference proceedings.

---

[2] The complaint alleges that Toll Brothers, Inc., is a successor in interest to Shappell Industries, Inc.

3

In March 2017, shortly after the judge to whom the case had been assigned retired, the case was reassigned to a different judge.

Plaintiffs claim that on April 13, 2017, some two years and nine months after the suit was filed, the Developer produced discovery that identified Petra, though we have nothing in the record to confirm that.

On August 2, 2017, while the matter was still stayed pending the judicial reference proceeding, plaintiffs filed an amendment to the complaint naming Petra as Doe 101. At the same time, it filed a certificate of merit as required by section 411.35 (certificate of merit required before serving the complaint in a malpractice action against an engineer). Plaintiffs personally served Petra with the summons and complaint on August 9, 2017, three years and 38 days after the complaint was filed.

Petra answered the complaint on September 7, 2017. It denied the claims against it but did not raise any issues concerning untimely service. Petra then moved to join the judicial reference proceedings, which plaintiffs opposed. Before that motion was decided, however, Petra withdrew the motion. According to plaintiffs, the parties stipulated to Petra joining the judicial reference and it participated for several months. However, we have nothing in the record to indicate that, and at a subsequent hearing Petra disputed the characterization that it had participated in the judicial reference.

On June 19, 2018, Petra filed the underlying motion to dismiss due to untimely service, with a hearing set for July 24, 2018. On July 10, 2018, two weeks before the scheduled hearing, the parties were in court on unrelated motions in this matter when the court decided, sua sponte, to advance the hearing on the motion to dismiss to that day and announced its intention to grant it. The court did this even though plaintiffs' opposition was not due until the following day and thus had not been filed. At the hearing, the court announced four motions it intended to address. After mentioning the motion to dismiss, plaintiffs' counsel informed the court that the motion to dismiss was not scheduled for that day. The court replied, "I was told they were advanced to today,

4

and whether you like it or not, I'm going to deal with them, and you can figure out what you're going to do with it." It was the court's professed view that the case had "spun wildly out of control." At the same time, the court acknowledged, "I don't know anything about this case, guys" (aside from what it read in the moving papers). Plaintiffs' counsel asked if he could file an opposition to the motion to dismiss that day, to which the court responded, "The way it works is, file when you can. I'm not going to turn it down. I start reading. And when I get bored, I stop reading." "Put the good stuff up front."

The court took all four matters under submission, stating: "At this point, it will all be under submission. I have to go back and review this. And don't be surprised if you see there's not much changed between what the minute order will say and what I already said, but if you get open—that's why you're here. You're here to get me to think about it." Plaintiffs filed their 101-page opposition (inclusive of exhibits) at 5:37 that evening. But the court's minute order for the day of the hearing, July 10, 2018, did not reflect the matter had been taken under submission. Instead, it reflected the court's decision to grant the motion to dismiss.

The clerk of the court served the minute order containing the court's rulings by electronic service on July 11, 2018, at 5:10 p.m., nearly 24 hours after plaintiffs filed their opposition to the motion.

Plaintiffs subsequently moved for reconsideration on the ground that the court had ruled without considering its opposition, but the court denied it without a hearing and without explanation. The court entered a judgment of dismissal as to Petra, from which plaintiffs timely appealed.

5

DISCUSSION

"The summons and complaint shall be served upon a defendant within three years after the action is commenced against the defendant. For the purpose of this subdivision, an action is commenced at the time the complaint is filed." (§ 583.210, subd. (a).) The complaint was filed July 2, 2014. Petra was served August 9, 2017. Three years and 38 days had elapsed.

However, the three-year calculation is tolled in certain circumstances. "In computing the time within which service must be made pursuant to this article, there shall be excluded the time during which any of the following conditions existed:" "(b) The prosecution of the action or proceedings in the action was stayed *and the stay affected service*." (§ 583.240, subd. (b), italics added.) The action here was stayed for approximately nine months while the Developer and plaintiffs engaged in the prelitigation dispute resolution procedure that permitted the Developer to inspect and cure the alleged defect. If applicable, that stay would be plenty long enough to bring the service on Petra within the three-year time limit. The question is whether that stay affected service. We conclude it likely did.

It is self-evident that a party must be identified before it can be served. In many cases, formal discovery is the only reasonable means of identifying a party. In such cases, if a stay prevents discovery, it also, as a practical matter, impedes (affects) service.

Although this rule is relatively straightforward, two points bear elaboration.

First, section 583.240, subdivision (b), applies where a stay "affects" service. The subdivision does *not* say that the stay must "prevent" service or "prohibit" service. Consequently, for the tolling to apply, formal discovery need be *reasonably necessary*, not essential. For example, suppose plaintiffs could have identified Petra by reviewing documents in the building inspector's office, but Petra was only identified in

6

an obscure footnote. We would not necessarily expect plaintiffs to find that information as a matter of course, and thus formal discovery would be reasonably necessary to identify Petra, even though it may have been technically possible to do so without discovery. A plaintiff need not go to extraordinary efforts.

Second, if the stay did not legally prohibit service, and if plaintiffs had a practical means of identifying Petra outside of formal discovery, the tolling provision would not apply. The parties' focus in this appeal was principally on whether the stay presented a *legal* impediment to service. In other words, did the stay itself prohibit service. We conclude the stay was not a legal impediment to service, but instead, potentially, a practical one.

From a legal standpoint, the stay did not prevent service. When a complaint is filed against Doe defendants, the court clerk issues a summons listing the fictitiously named defendants, which happened here. Under section 474, which governs the use of fictitious names in pleadings, a summons can be served on a fictitiously-named defendant provided it contains the following advisement: "'To the person served: You are hereby served in the within action (or proceedings) as (or on behalf of) the person sued under the fictitious name of (designating it).'" As such, even though court proceedings had been stayed, no further court proceeding was required as a prerequisite to service on Petra. Plaintiffs simply had to hand Petra the relevant papers along with the required advisement. Such service would have been valid and would not have violated the stay.

7

In this respect, the present case is easily distinguishable from the case plaintiffs rely most heavily upon, *Highland Stucco & Lime, Inc. v. Superior Court* (1990) 222 Cal.App.3d 637. There, the court had not only stayed the matter, but *explicitly prohibited* plaintiffs from serving additional defendants. (*Id.* at p. 644.) No such explicit prohibition was present here, and thus the stay did not affect service as a legal matter.[3]

Instead, the proper focus here is on whether the stay affected service as a practical matter by depriving plaintiffs of the only reasonable means of identifying Petra. If plaintiffs *did* have other reasonable means of identifying Petra, then, because the stay itself did not directly prohibit service, the stay did not affect service. It is, after all, still a plaintiff's burden to serve all parties within three years of filing the complaint. And if there were practical and reasonably discoverable means of doing so without formal discovery, then the stay did not impede service and the tolling provision does not apply.[4]

---

[3] Plaintiffs nevertheless contend the stay *did* prohibit service on Petra because the dispute resolution procedure in the purchase agreement that led to the stay precluded them from pursuing "any other remedies available to it under this Agreement, at law or otherwise, including without limitation the filing of any lawsuit or action, until Seller has had the reasonable opportunity to inspect and cure the alleged Defect." But plaintiffs read this clause too broadly. The purchase agreement only precluded plaintiffs' pursuit of remedies "available to it under this Agreement." Plaintiffs did not have any remedies against Petra "available to it under this Agreement" for a simple reason. Petra was not a party to the purchase agreement. Indeed, plaintiffs strenuously asserted that position in the trial court in opposition to Petra's attempt to join the judicial reference, stating, "The Plaintiffs do not consent and there is no written contract between the Plaintiffs and Defendant Petra that would bind these two parties to a general judicial reference." (Bold emphasis omitted.)

[4] We note that section 583.240, subdivision (d), provides an additional tolling provision where "[s]ervice, for any other reason, was impossible, impracticable, or futile due to causes beyond the plaintiff's control." But it immediately qualifies that provision, stating: "Failure to discover relevant facts or evidence is not a cause beyond the plaintiff's control for the purpose of this subdivision." At first blush, the latter statement may seem to preclude our holding here: After all, we are, in a sense, saying that an excusable failure to discover relevant facts results in tolling. Importantly, however, that qualifier applies only to "this subdivision"—meaning subdivision (d). Our

8

Rather than decide in the first instance whether section 583.240, subdivision (b) applies here, we deem it prudent to remand for the trial court to make appropriate findings consistent with this opinion. We do so for several reasons. First, we normally do not engage in factfinding on appeal. Because application of the standard we announce will differ based on the unique facts and circumstances of each case, the trial court is the appropriate forum to evaluate those facts and circumstances and to make the factual finding. Second, because we have altered the legal standard the parties had assumed was applicable to Petra's motion, in fairness, the parties should have an opportunity to present a new factual showing to meet that standard.[5]

_____

analysis is based on subdivision (b), and thus the qualifier does not apply. Moreover, subdivision (d) applies *only* where service is impossible, impracticable, or futile "for any other reason," i.e., a reason *not* addressed in subdivisions (a) through (c). Stay orders are specifically addressed in subdivision (b). Thus subdivision (d), by its terms, does not apply.

[5] Aside from the merits of the motion to dismiss, plaintiffs also contend the procedure employed by the trial court in dismissing Petra violated their right to due process. The fundamental requirements of procedural due process are notice and an opportunity to be heard. (*Gamet v. Blanchard* (2001) 91 Cal.App.4th 1276, 1286.) Here, the court advanced the hearing on the motion to dismiss without notice to anyone, apparently because a clerk had told the judge that the hearing was advanced. When the attorneys told him that was not the case, the judge simply refused to budge. Plaintiffs' counsel was clearly unprepared to argue the motion at the hearing, and when plaintiffs asked to submit an opposition, the court allowed it but implied it would not be taken seriously. The record is ambiguous as to whether the court considered plaintiffs' hastily prepared opposition to the motion to dismiss. But because we reverse and remand on the merits, we need not decide whether plaintiffs were denied due process and if so, whether the deprivation was prejudicial.

9

The judgment is reversed and the matter is remanded for a new hearing on Petra's motion to dismiss, at which the parties shall be permitted to present additional evidence, if any, as to whether the nine-month stay deprived plaintiffs of the only reasonable means of identifying Petra.  Plaintiffs shall recover their costs incurred on appeal.


IKOLA, J.

WE CONCUR:


ARONSON, ACTING P. J.


FYBEL, J.