Filed 10/3/14  Fernandez v. Cobert CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| MANUEL FERNANDEZ et al., | B240686 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. LC081234) |
| v. | |
| JOSEPH M. COBERT et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Frank J. Johnson, Judge.  Affirmed.

Manuel Fernandez, in pro. per., and CareyLee Moisan, in pro. per., for Plaintiffs and Appellants.

Lewis Brisbois Bisgaard & Smith, Raul L. Martinez and Kenneth C. Feldman for Defendants and Respondents.

_____

Plaintiffs and appellants Manuel Fernandez and Careylee Moisan, both self-represented litigants on appeal, sued their former attorney, defendant and respondent Joseph Cobert,[1] for legal malpractice, breach of fiduciary duty, breach of written contract, fraud and negligent misrepresentation. The malpractice-based case followed two underlying lawsuits in which Cobert represented Fernandez and Moisan.

Cobert filed two motions for summary judgment, separately addressing the claims arising from each of the underlying lawsuits. The trial court granted both motions for summary judgment, and thereafter entered a final judgment in favor of Cobert. Fernandez and Moisan appeal. We affirm.

## FACTS

*General Background*

At all relevant times, Fernandez and Moisan separately owned real properties in Agua Dulce. Fernandez and Moisan were also principals in Rancho Agua Dulce, LLC (hereafter Rancho), a Nevada limited liability company which purchased a multi-acre parcel of real property in the Agua Dulce area commonly known as "Oasis Park."

Between 2005 and mid-2007, Cobert acted as attorney of record for Rancho in a land dispute lawsuit involving the Oasis Park property. In that underlying lawsuit, a group of landowners in Agua Dulce alleged that they had easement rights over Oasis Park to reach a nearby public roadway. Rancho (acting through Fernandez and Moisan) took the position that the landowners had to purchase the easement rights. In 2008, judgment was entered against Rancho in the land dispute lawsuit. According to interrogatory answers in the current legal malpractice action, verified by Fernandez, Cobert billed Rancho more than $350,000 in legal fees in the land dispute case. Further, in the current legal malpractice action, Fernandez and Moisan claim that Cobert has held them personally liable for Rancho's fees incurred in the land dispute lawsuit.

---

[1]     Our references to attorney Cobert include his law corporation, which was also a named defendant in the current legal malpractice action.

During part of the same time period that the Oasis Park land dispute lawsuit, Cobert represented Fernandez and Moisan in a second case arising from disputes with a water company in the Agua Dulce area. In 2008, summary judgment was entered against Fernandez and Moisan in the second case. The judgment entered in the second case included an award of $250,000 against Fernandez and Moisan for the water company's attorney fees. According to interrogatory answers in the current legal malpractice case, Cobert billed Fernandez and Moisan approximately $97,000 in legal fees for this second case.

In summary, according to Fernandez's and Moisan's claims in the current legal malpractice based action, they are financially liable for approximately $700,000 in attorney fees arising from two underlying cases in which they ended up on the losing side ($350,000 + $97,000 to Cobert + $250,000 to the water company). Fernandez and Moisan claim that their financial liabilities, i.e., the attorney fees liabilities, are the result of Cobert billing them for legal work which was not necessary, counter-productive, or not actually done.

***The Gillingham Action***

The Oasis Park property purchased by Rancho rested between Soledad Canyon Road and properties owned by several landowners. At some point after Rancho bought the Oasis Park property, a group of landowners who are identified in the briefs as the "Gillingham Parties," along with other area landowners, claimed they had prescriptive easement rights allowing them to travel to and from their properties, over a part of Oasis Park, to reach Soledad Canyon Road. Rancho, acting through Fernandez, apparently indicated its intention to block access over the Oasis Park property unless the landowners paid money to purchase express easement rights.[2]

---

[2]     Based on this court's review of the record before us on appeal, it is not clear whether Rancho's position (by Fernandez) regarding easements was made before or after consulting with an attorney.

In April 2005, Fernandez and Moisan executed a written retainer agreement with Cobert. There are differing statements in the parties' briefs about who hired Cobert. In their opening brief, Fernandez and Moisan state that Rancho was not a party to the retainer agreement.[3] In his respondent's brief, Cobert states that he was retained by Rancho. In either event, Fernandez and Moisan both signed the retainer agreement identifying themselves as "client." The retainer agreement included language stating that "[e]ach individual signing this agreement on behalf of a corporation agrees [to be] personally liable for all amounts owed to [Cobert] by such corporation." The retainer agreement did not expressly state the nature of the legal matter for which Cobert was being retained, but, plainly, Cobert was retained in connection with the Oasis Park easement dispute noted above.

In May 2005, Cobert sent a letter on behalf of Rancho to attorneys who were representing certain title insurers for certain of the property owners in the area of the Oasis Park easement dispute. Cobert's letter indicated that it was an "initial proposal" for working out a resolution of the easement access dispute as to Rancho, and the insurers and their insureds. The letter included an offer for specified temporary access arrangements, and a framework for a final signed agreement between the parties.

In June 2005, the Gillingham Parties (represented by different lawyers than those representing the title insurers noted above) filed a complaint against Rancho, the owner of record title of the Oasis Park property. The Gillingham Parties' complaint sought to quiet title to the prescriptive easement that they claimed existed over Oasis Park. This case was entitled *Gillingham v. Rancho Agua Dulce LLC*. (L.A. Super. Ct., No. BC335672.) The case is identified as the "Gillingham Action" in the briefs, and we do the same.

---

[3]     We do not see Rancho's name expressly written on the retainer agreement.

4

In September 2005, Rancho (represented by Cobert on the face of all pleadings) filed an answer and a cross-complaint seeking damages for trespass in the Gillingham Action. At oral argument of the current appeal, Fernandez acknowledged that it was undisputed that Cobert represented Rancho in the Gillingham Action.

On April 26, 2007, Cobert filed a Substitution of Attorney form in the Gillingham Action, indicating that attorney Gregory Pedrick was Rancho's new legal representative. The Substitution of Attorney form was signed by Cobert and Pedrick, and by Fernandez on behalf of Rancho.[4]

In January 2008, the Gillingham Action was tried to the trial court (Hon. Teresa Sanchez-Gordon), sitting without a jury. Attorney Gregory Pedrick represented Rancho at trial. In April 2008, the court signed and entered a judgment in the Gillingham Action. The judgment awarded each of the Gillingham Parties a respective, legally-described, permanent, equitable easement over Rancho's Oasis Park property. Further, the judgment included provisions for a permanent injunction against Rancho not to interfere with the Gillingham Parties' easement rights.

In June 2008, Rancho (represented by new counsel, attorney Frank Marchetti) filed a notice of appeal. In September 2008, our court dismissed Rancho's appeal upon a request for dismissal by Rancho.

### The SPV Action

SPV Water Company provides water to the housing development in Agua Dulce in which Fernandez (along with his spouse) and Moisan resided. Sometime shortly after April 2004, SPV issued special assessments to its customers in order to pay for new water

---

[4]    In his motions for summary judgment, Cobert presented evidence that Fernandez and Moisan had signed what could be called an end-of-representation agreement in April 2007, at the time he substituted out of the Gillingham Action. The agreement included a series of recitals to the effect that Cobert's representation had been professional, and that his attorney fees up to April 2007 had been reasonable. In the oppositions to the motions for summary judgment, Fernandez and Moisan submitted declarations stating that they had not signed the April 2007 agreement. Because the current appeal arises in the context of summary judgment, and because the facts are disputed, we determine that the April 2007 agreement should not be considered in addressing the merits of the motions.

supplies.[5]  When the Fernandezes and Moisan and several other customers refused to pay, the water company recorded liens against the non-paying customers' properties.

In January 2005, the Fernandezes and Moisan filed a complaint against SPV for declaratory relief and damages, alleging that the water company's liens were invalid and should be released, and that the company had damaged the local area's water supplies causing harm to the company's customers.  This case was entitled *Fernandez v. SPV Water Co.* (L.A. Super. Ct., No. BC326718.)  The parties identify this case as the "SPV Action," and so do we.

The Fernandezes and Moisan were represented by an attorney named Ed Orchon when they filed the SPV Action.  By early 2006, a series of demurrers had been sustained in the SPV Action.  In May 2006, Cobert agreed to represent the Fernandezes and Moisan in the SPV Action for the purpose, in Cobert's words, of "try[ing] to straighten out that mess."  The Fernandezes and Moisan signed a letter confirming that Cobert would represent them in the SPV Action.  In June 2006, Cobert substituted in as the attorney of record for the Fernandezes and Moisan in the SPV action, and, filed a motion for leave to file a fourth amended complaint in the action.  In July 2006, the trial court granted leave to file the fourth amended complaint.  At some point not plainly ascertainable from the record before us on the current appeal, but apparently around the fall of 2006, attorney Gregory Pedrick became involved in the SPV Action.[6]

---

[5]  In his respondent's brief for the current appeal, Cobert brought to our attention that Fernandez and Moisan served on SPV's board of directors from July 2002 to April 2004.  In 2005, Fernandez and Moisan were charged in a criminal case arising from activities during their tenure as SPV directors.  They eventually pleaded no contest, and subsequently received felony probation sentences.  In December 2010, Division Three of our court affirmed the judgment.  (See *People v. Fernandez & Moisan* (Dec. 14, 2010, B215818 [nonpub. opn.].)  We do not see any relevance in Fernandez's and Moisan's criminal case for purposes of their current appeal, and do not understand why Cobert has dedicated a significant part of his respondent's brief discussing the criminal case.

[6]  In his motion for summary judgment, Cobert indicated that Pedrick had made a special appearance at a hearing in the SPV Action in the fall of 2006 when Cobert was

6

On April 26, 2007, Cobert filed a "Notice of Dissociation of Counsel" in the SPV Action, indicating that Pedrick would "forthwith" be acting as Fernandez's and Moisan's sole counsel in the action. The dissociation of counsel form was signed by Cobert, Pedrick, the Fernandezes (both Manuel and his spouse), and Moisan.

In September 2007, the trial court entered judgment in favor of the water company in the SPV Action after granting the company's motion for summary judgment. The final judgment in the SPV Action awarded $250,000 to the water company for its attorney fees against the Fernandezes and Moisan. The Fernandezes and Moisan filed two appeals; one from the summary judgment and the second from the order fixing the amount of the attorney fees award. In November 2009, we affirmed the judgment in full, including the attorney fee award. (See *Fernandez et al. v. SPV Water Co*. (Nov. 10, 2009, B203902 [non pub. opn.].)

### The Legal Malpractice Action

Meanwhile, in April 2008, just after judgment in the Gillingham Action had been entered, Rancho, the Fernandezes, and Moisan (all represented by legal counsel, namely, attorney Frank Marchetti) filed an action against Cobert. The operative second amended complaint alleged causes of action, listed respectively, as follows: legal malpractice (this encompassed four subparts —the Gillingham Action before April 2007; the SPV Action before April 2007; the Gillingham Action after April 2007; and the SPV Action after April 2007); breach of fiduciary duty; breach of written contract; fraud based on misrepresentation regarding the need for legal work and based on "billing fraud;" and negligent misrepresentation.

The second amended complaint alleged the following facts. Cobert "enlarged the scope of the Gillingham Action and the SPV Action" with "little, if, any" accompanying benefit to Rancho, the Fernandezes and Moisan. Further, if Cobert had given proper advice as to the claims of the Gillingham Parties, then Rancho would have sold an easement, and avoided the extended litigation and attorney fees which ensued. Cobert

unavailable, and that Fernandez and Moisan thereafter asked that Pedrick be allowed to assist further in the case.

7

also should have advised the Fernandezes and Moisan not to pursue the SPV Action litigation. If they had not been involved, they would not have been held liable for the water company's attorney fees. The second amended complaint does not appear to be based on allegations that Rancho, the Fernandez and Moisan would have and should have "won" the two underlying cases had they been properly represented. As noted, the legal malpractice case seems to be based on the theory that the two underlying cases, or at least a significant amount of the attorney fees in the cases, should have been avoided.

Cobert filed two separate motions for summary judgment, or, in the alternative, summary adjudication of issues of each cause of action alleged in the second amended complaint. One of the motions was directed at claims arising from Cobert's legal representation in the Gillingham Action; the second motion was directed at claims arising from Cobert's representation in the SPV Action. Rancho, the Fernandezes and Moisan (now represented by yet another new attorney, William Hamilton) filed oppositions. The evidence related to the motions for summary judgment is discussed below in more detail. Before the hearings, Rancho's claims were dismissed because it failed to post an undertaking as required of a foreign corporation. (See Code Civ. Proc. § 1030.) At a hearing on December 16, 2011, the trial court granted both of Cobert's motions for summary judgment. The trial court granted the motions for the following stated reasons:

> "There [are] two huge, gaping holes in this case that I can see, and I want to make sure it's clear this is no reflection on Mr. Hamilton. I know you just recently came into the case; so I want to make that clear. . . .

> "The first hole, particularly with regards to the causes of action for legal malpractice and breach of fiduciary duty and for breach of contract, those being the first, second, and third causes of action, there's just no evidence of any negligence whatsoever that I can see here.

> "I don't see any breach of any duty. I don't see any departure from normal standards in a law practice. I just don't see it. I looked in vain for some smoking gun that would at least provide an issue of fact to allow this

8

case to proceed to trial, and I'm not seeing it. It was just not identified for me in the opposition; and I, frankly, don't believe it exists.

"The second gaping hole is that, even getting past that minor issue, I don't see any causation at all. I don't see any links between any alleged negligence which may or may not have occurred and any damages which were allegedly caused.

"In one case, Mr. Cobert substituted out five months prior to a summary judgment that was entered adversely against the plaintiffs. And in another case, approximately a year before a bench trial which was resolved adverse to the plaintiffs. I just don't see any causation at all.

"And lastly -- this is almost an afterthought -- I don't see much proof of damages. . . . I don't see what the damages are.

"The opposition itself is replete with instances where assertions of fact are made that are just not borne out by the uncontroverted evidence which exists before the court . . . .

"There's a flat-out denial that the agreement of April 2007 was entered into; and that's just obviously not the case. You might as well argue that the earth is flat as far as that goes. That is so obviously an improper assertion of fact that it tends to cast aspersions on all the other ones because that one is just obviously false."[7]

The court also found that Fernandez and Moisan, individually, lacked standing to seek relief arising from the Gillingham Action, because Rancho was the real party in interest in the Gillingham Action as it had been the client. The court dismissed Rancho from the legal malpractice action against Cobert for failing to post an undertaking as required under Code of Civil Procedure section 1030. The trial court also found that Cobert's objections to Fernandez's and Moisan's proffered evidence were well taken,

---

[7] As noted above (see footnote 4, *ante*), we have disregarded the April 2007 agreement in addressing the merits of Cobert's motions for summary judgment.

but, beyond this, the court explained that, even assuming it overruled the objections, "it [] would not make the slightest difference" because Fernandez and Moisan had not proven any wrongdoing by Cobert.

On January 30, 2012, the trial court entered judgment in accord with its orders granting Cobert's motions for summary judgment. In April 2012, Rancho, Fernandez and Moisan (represented by attorney William Hamilton) filed a joint notice of appeal from the judgment. Shortly after the filing of the notice of appeal, the California State Bar ordered attorney Hamilton ineligible to practice law. In May 2013, the State Bar disbarred Hamilton. Fernandez and Moisan then elected to pursue their appeal in pro per. Rancho, being without counsel, could not continue its appeal.[8]

## DISCUSSION

### I. Respondent's Motion to Dismiss

Respondent Cobert filed a motion to dismiss this appeal based on the following grounds: failure to provide an adequate record, failure to point to legal error, failure to fairly summarize the significant facts and ignoring facts unfavorable to appellants, failure to designate significant declarations and respondent's objections, failure to provide a notice of appeal, and for making reference to matters that are not part of the record on appeal and or that were not considered by the trial court. While we are sympathetic to respondent's claims, we find the record adequate to conduct a review of the summary judgment rulings on the merits.

In addressing an appeal, we begin with the presumption that a judgment or order of the trial court is presumed correct, and reversible error must be affirmatively shown. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) An appellant must "present argument and authority on each point made." (*County of Sacramento v. Lackner* (1979) 97 Cal.App.3d 576, 591; see also Cal. Rules of

---

[8] Fernandez and Moisan, as Rancho's members, have not arranged for Rancho to be represented. To the extent Rancho's appeal may still be open as a matter of this court's docket, the appeal is hereby dismissed. (*Caressa Camille, Inc. v. Alcoholic Beverage Control Appeals Bd.* (2002) 99 Cal.App.4th 1094, 1101 [a corporation may not appear in propria persona, or through an officer or agent that is not an attorney].)

10

Court, rule 8.204(a)(1)(B).)  An appellant must direct the reviewing court to the pertinent evidence or other matters in the record that demonstrate reversible error.  (Cal. Rules of Court, rule 8.204(a)(1)(B); *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115.)  It is not our responsibility to comb the appellate record for facts, or to conduct legal research in search of authority, to support the contentions on appeal.  (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768.)

Moreover, an appellant's election to act as his or her own attorney on appeal does not entitle him or her to any particular leniency as to the rules of practice and procedure; otherwise, ignorance is unjustly rewarded.  (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985; *Lombardi v. Citizens Nat. Trust etc. Bank* (1955) 137 Cal.App.2d 206, 208-209; *Gamet v. Blanchard* (2001) 91 Cal.App.4th 1276, 1284; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.)

An examination of the record and briefs demonstrates there is an adequate, though incomplete record for review of the summary judgment motions.  We find the appellants' briefing to offer a sufficient indication of legal error, and a biased but adequate statement of facts, which respondent has clarified and expanded upon in its own briefing.  Further, our review of the record includes a properly filed notice of appeal.  However, we will not consider the exhibits appended to the opening brief which were not considered by the trial court.  For all of these reasons, we deny the motion to dismiss the appeal.

## II.     The Motions for Summary Judgment

Fernandez and Moisan (hereafter collectively Fernandez) contend the trial court's decisions to grant Cobert's two motions for summary judgment were erroneous and must be reversed.[9]  We disagree.

### A.      The Standard of Review

On appeal from a summary judgment, our task is "to independently determine whether an issue of material fact exists and whether the moving party is entitled to

---

[9]     Regardless of what we do with the current appeal, the judgment as it exists in favor of attorney Cobert and against Rancho will remain in place and in effect.  We do not read the opening brief on appeal to include any claim of error asserted by Rancho.

11

summary judgment as a matter of law.  [Citation.]  'We independently review the parties' papers supporting and opposing the motion, using the same method of analysis as the trial court.  Essentially, we assume the role of the trial court and apply the same rules and standards.'  [Citation.]  We apply the same three-step analysis required of the trial court.  First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond.  Second, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in the moving party's favor.  When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable issue of material fact.  [Citations.]  In so doing, we liberally construe the opposing party's evidence, strictly construe the moving party's evidence, and resolve all doubts in favor of the opposing party.  [Citations.]"  (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493-494.)

### B.    Legal Malpractice

Fernandez contends summary judgment must be reversed because he has a viable cause of action for legal malpractice.  Fernandez asserts that an attorney who bills for services that are unwarranted by the objective circumstances of a case, and who is proved to have done as much, may be held liable for legal malpractice.  In Fernandez's words: "Churning for fees is the most basic form of malpractice."  We do not disagree with this rule of malpractice liability in the abstract, but find that Fernandez has not shown error associated with his cause of action for legal malpractice based on his excessive billing or "churning for fees" theory.

To prevail on a claim for legal malpractice, a plaintiff must prove the following elements:  (1) the attorney's duty to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and resulting injury; and (4) actual loss or damage resulting from the attorney's actions.  (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1199.)  We accept here that an attorney's duty to use the skill, prudence, and diligence of his or her profession includes a duty not to bill for services that are not

12

necessary in a given case. Further, we examine the elements of legal malpractice in the context of a motion for summary judgment, meaning that attorney Cobert had the initial burden to show that Fernandez and Moisan could not establish at least one element of their legal practice claim. The burden then shifted to Fernandez to present evidence showing the existence of disputed facts on any challenged element.

Attorney Cobert's two motions for summary judgment were supported by his own declaration in which he stated that he "believed" he had handled the Gillingham Action and SPV Action "with the diligence, skill and prudence required" of someone practicing real estate law. Attorney Cobert's declaration further averred that he had personally reviewed all of his billings to assure the accuracy of the work and time expended, and that the "net effect of any [errors] . . . was in . . . favor [of Fernandez]." Although Cobert was a percipient witness, he was not disqualified from giving expert testimony in his own case. (Cf. *Kalaba v. Gray* (2002) 95 Cal.App.4th 1416, 1420 et seq. [treating physician may properly give expert testimony].) In addition, Cobert's motions for summary judgment were further supported by a declaration from Makram Gharib, who explained that he had worked as a paralegal in Cobert's law office during the time of the Gillingham Action and SPV Action. Gharib testified in relevant part: "As to the Gillingham Action and SPV Action, I saw [Cobert's] bills. He never billed for tasks that were not done or overbilled for tasks. . . ." Gharib testified that Cobert billed at hourly rates less than allowed under his fee agreements with Fernandez. We are satisfied that attorney Cobert met his initial burden on his motions for summary judgment by presenting evidence, through his personal declaration and the declaration of an employee with personal knowledge, showing that Cobert's performance measured up to professional standards, and that he had not engaged in wrongful billing. The burden then shifted to Fernandez to show the existence of disputed facts.

Fernandez's opening brief on appeal does not point us to evidence in the record which supports a finding that Cobert engaged in excessive billing in the course of either the Gillingham or SPV Actions. Fernandez's reference to the judgment in the Gillingham Action does no more than show that the Gillingham Parties won their lawsuit against

13

Rancho for an easement. The loss of the case alone does not tend to prove that an attorney engaged in valueless legal work or otherwise overbilled. In short, the judgment in the Gillingham Action does not show that Cobert overcharged during the Gillingham Action. In the absence of any competent evidence supporting a finding that Cobert's legal work was "unnecessary" or "counter-productive" under the standards governing legal work in the local community, Fernandez has not shown wrongful billing.

Fernandez cites the gross figures for the attorney fees that Cobert billed in connection with the Gillingham Action. The gross amount of fees charged by an attorney is not evidence that the fees were excessive, and amounted to wrongful "churning for fees." In the absence of any competent evidence supporting a finding that Cobert "should have" recognized the Gillingham Action to be a loser from the earliest stages of the litigation, and should have promptly advised Fernandez to settle the case so as to avoid attorney fees, and showing that Fernandez would, in fact, have agreed to a settlement, Fernandez has not shown wrongful billing.

A claim that an attorney's legal work was wasteful of time and money is the type of claim that must be supported by expert evidence, or, at a minimum, by evidence which is properly accepted to show a case was worthless. A client's post-case lament about the amount of attorney fees that his or her attorney charged is not evidence of wrongful excessive billing.

Our view of the judgment in the Gillingham Action is the same with respect to Fernandez's reliance on the judgment in the SPV Action. The judgment shows little more than that SPV defeated Fernandez's claims in the SPV Action. As we have noted, merely showing that a case was lost does not prove "churning for fees."

In sum, we reject Fernandez's argument that the losses in the two cases tend to prove that most or much of Cobert's legal work during the cases was unjustified. Attorneys regularly work professionally and diligently on cases that end up being lost.

14

Fernandez's remaining citations to the record are to broad blocks of the record, and do not point us to evidence in support of his "churning for fees" theory of liability.[10]

## C.     Breach of Fiduciary Duty

Fernandez contends summary judgment must be reversed because he has a viable cause of action for breach of fiduciary duty. Again, Fernandez's argument is that Cobert engaged in wrongful billing. In other words, Fernandez's arguments as to his claim for breach of fiduciary do not independently point to a breach of any ethical standards governing the loyalty owed a client, but overlay his wrongful billing claim in his malpractice claim. It is the same claim by different labels. We find that Fernandez has not affirmatively shown error in the trial court's order granting summary judgment insofar as his breach of fiduciary duty claim is concerned.

To prevail on a claim for breach of fiduciary duty, a plaintiff must prove the following elements: (1) the existence of a fiduciary duty; (2) a breach of the duty, and damage proximately caused by the breach. (*Knox v. Dean* (2012) 205 Cal.App.4th 417, 432.) A claim for legal malpractice is distinct from a claim for breach of fiduciary duty, although a similar evaluation is undertaken; the difference is in fixing the scope of the duty. In the malpractice situation, the duty is to perform with ordinary competence of a lawyer; the duty in breach of fiduciary duty is generally fixed by looking to the fiduciary duties owed under the Rules of Professional contact or other statutory or developed law related to the loyalty a lawyer owes to his or her client. (See *Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1086.)

Given that the breach of fiduciary duty analysis is presented in the context of summary judgment it was attorney Cobert's initial burden to show that Fernandez could not establish one or more elements of his fiduciary duty based claims. We find Cobert met this burden for the reasons we stated in the legal malpractice discussion above.

---

[10]     His references to pages 270 through 442, and 444 through 455 are not helpful in finding evidence in support of his argument that summary judgment was improper.

In response, Fernandez's opening brief on appeal points us to evidence showing raw billing numbers, for example, a bill from Cobert dated October 1, 2005 which stated that attorney fees totaled $10,564 and that costs totaled $1,436. Such raw billing numbers do not show wrongful billing. At no point in the opening brief does Fernandez point to a particular bill, and point to evidence tending to show that the bill was excessive. The lack of competent evidence in support of Fernandez's claims is fatal.

Fernandez's opening brief also points us to the deposition testimony of Marcy Wolf, a former legal secretary in Cobert's law office. Wolf's deposition testimony is attached as an "exhibit" to the opening brief, and is offered as proof of wrongful billing. We do not consider this evidence because it appears that Fernandez did not present it in the trial court. A review of Fernandez's two separate statements of fact in opposition to Cobert's two motions for summary judgment shows that Fernandez did not cite to any part of Wolf's deposition testimony in an attempt to defeat summary judgment.[11]

Instead, the evidence he points to are letters from Cobert to Fernandez. The letters largely concern Cobert's information about his attorney fees and costs. The letters were written during the Gillingham Action, and do not include any statements concerning the likelihood of success in the Gillingham Action. In addition, he points to interrogatory responses by Rancho during the legal malpractice case. There, Rancho (by Fernandez) asserted that Cobert "advised" Rancho that it "should sell the easement" to the Gillingham Parties for $1 million. Further, Rancho stated that Cobert represented that

[11] Of equal or more importance, a review of the deposition testimony that is attached to Fernandez's opening brief on appeal does not include specific evidence which would tend to support a finding that Cobert was wrongly billed in the Gillingham Action and or the SPV Action. Wolf testified *generally* about Cobert's wrongful billing practices. The problem with Fernandez's attempt to use Wolf's generalized deposition testimony as evidence that Cobert engaged in excessive billing in the course of the Gillingham and SPV Actions is that Wolf further testified, in connection with specific bills that she was shown during her deposition, that she had no personal recollection whether the bills reflected wrongful billing by Cobert as to Rancho, Fernandez, or Moisan. In short, while Wolf generally accused Cobert of engaging in wrongful billing practices as to his clients, she could not cite any specific instance of wrongful billing as to Rancho, Fernandez and Moisan.

16

"the title insurers [for the Gillingham Parties] would pay such amount in order to ensure that [their insureds] had proper ingress and egress to their homes because the insurers would not want to risk liability to their insureds." According to Rancho (by Fernandez): "Essentially, Cobert convinced Rancho that they had the [Gillingham Parties'] insurers 'over a barrel.'"

Accepting all of Fernandez's evidence as true, which we do in the context of a summary judgment motion, we do not see disputed facts concerning fraud. The various statements attributed to attorney Cobert are not misrepresentations of *fact*. Given a construction in favor of Fernandez, the statements made by Cobert must be seen as overly optimistic expressions about how the other parties in the Gillingham Action would react to Rancho's demands. In other words, Fernandez's evidence shows attorney Cobert offered predictions to Fernandez about the positive outcomes which could be expected in the Gillingham Action. Fraud, however, requires misstatements of fact and an intent to defraud. We simply see no evidence in the record which shows that Cobert made misstatements of fact to Fernandez with the intent to defraud. Certainly, attorneys should be realistic with clients about the potential outcomes of litigation, but offering optimistic views on the potential outcome of litigation is not a species of fraud.

### E.    Breach of Contract

Fernandez next contends summary judgment must be reversed because he has a viable cause of action for breach of contract. Once more, we are not persuaded by Fernandez's arguments.

First, Fernandez argues that he and Moisan only, and not Rancho, signed the 2005 retainer agreement with attorney Cobert. We agree with Fernandez that this is what the evidence shows, but do not understand from his argument how this demonstrates error in the trial court's decision to grant Cobert's motions for summary judgment. Assuming that Fernandez is arguing that Cobert breached the 2005 retainer agreement which he had with Fernandez directly, merely pointing to the agreement does show a breach of the agreement. In other words, accepting that Fernandez and Cobert had a contract, and that

17

the contract would be breached by overbilling, Fernandez still has not demonstrated that such overbilling occurred.

Second, Fernandez argues that a May 4, 2005 letter which Cobert sent to counsel for the Gillingham Parties is evidence "that Cobert failed to do the most basic investigation, to research the easement." We have reviewed the letter and do not see that it proves such a failure to investigate. Next, Fernandez argues: "Had Cobert . . . performed the most basic function to research the easement, he knew or should have known an easement had existed and been in use since the 1930s." We have reviewed the portions of the clerk's transcript Fernandez cites in support of this argument, and do not see proof that Cobert knew or should have known about any existing easement rights. Instead, the references to the record are to the final judgment in the Gillingham Action. The judgment shows that a trial court found an easement at the end of the case based on trial evidence showing ingress and egress usage over Rancho's property since the 1930's; the judgment does not show that Cobert knew or should have known — at the beginning of the case — that an easement existed.

Third, Fernandez argues that, in light of the evidence supporting the Gillingham Parties' claim of a long-existing easement, Cobert should not have demanded nearly $1 million from the Gillingham Parties to buy easement rights. Without offering any citation to the evidence in the record, Fernandez asserts that Cobert made the demand to the Gillingham Parties with the "intent" to "instigate" litigation by the Gillingham Parties against Rancho, so that Cobert could "submit astronomical fee and cost charges . . . for work [that Cobert] allegedly was going to accomplish." Fernandez's arguments appear to be a variation on the overall theme in all of his causes of action that Cobert billed for legal services that were unnecessary or counter-productive. Fernandez argues he presented enough to show there was a breach of contract because Cobert charged unreasonable attorney fees in the Gillingham Action. There are no arguments in Fernandez's brief that there was a breach of contract in connection with the SPV Action.

18

Once again, Fernandez's breach of contract claim overlays his legal malpractice claim, including its predominant theory of wrongful billing. For all of the reasons discussed above in addressing his other causes of action, we find that Fernandez did not present any evidence creating a triable issue of fact on a claim of wrongful billing by attorney Cobert. In the absence of competent evidence showing that Cobert performed legal work that was not proper under the standard of care, we find no basis for reversing the trial court's decision to grant the summary judgment motions.

## III. Litigation Other Than the Current Legal Malpractice Action

Fernandez tells us about "new litigation" that transpired after Cobert's summary judgment motions were granted in the current case. Fernandez tells us that he was or is being sued by Pedrick for attorney fees "already paid in the underlying [Gillingham and SPV Actions]." Fernandez also refers to a legal malpractice case, possibly against Pedrick, and a settlement "for policy limits in place of filing an answer." Fernandez's assertions are unsupported by references to the record in the current legal malpractice case, which only involves Cobert.

We do not understand from Fernandez's statements about attorney Pedrick how it is that the trial court erred in granting attorney Cobert's motions for summary judgment in the current case. Fernandez's "arguments" here are simply not sufficient to justify our court in reversing summary judgment in favor of attorney Cobert.

**DISPOSITION**

The judgment is affirmed. Each party to bear its own costs on appeal.


BIGELOW, P.J.

We concur:

RUBIN, J.



FLIER, J.

19