Filed 4/20/22  Estate of Ribal CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| Estate of JOSEPH E. RIBAL, Deceased.<br>_____<br><br>LU TUAN NGUYEN,<br><br>    Petitioner and Appellant,<br><br>      v.<br><br>DAVID R. RIBAL, as Co-executor, etc., et al.,<br><br>    Objectors and Respondents. | G060234<br><br>(Super. Ct. No. 30-2019-01091998)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Aaron W. Heisler, Temporary Judge.  (Pursuant to Cal. Const. art. VI, § 21.)  Affirmed.

Lu Tuan Nguyen, in pro. per., for Petitioner and Appellant.

The Law Offices of Cheryl L. Walsh and Cheryl L. Walsh for Objectors and Respondents.

\*　　　　\*　　　　\*

Appellant Lu Tuan Nguyen and decedent Joseph E. Ribal, who passed away in 2019, were in a relationship for decades. Unfortunately, in the years before he passed, Ribal's cognitive abilities began to decline. This led to several lawsuits between Nguyen and various representatives of Ribal and his estate concerning Ribal's assets. At this point, litigation has been ongoing for a decade. There have been several decisions, now final, by different trial court judges denying Nguyen an interest in various assets of Ribal. In what appears to be a last-ditch effort, Nguyen filed a creditor's claim seeking $526,555 from Ribal's estate. The trial court sustained a demurrer filed by respondents, the executors of Ribal's estate (Ribal's two children), on grounds Nguyen's claim was barred by collateral estoppel. Nguyen now appeals, arguing the trial court wrongly sustained the demurrer. We affirm the order because Nguyen has failed to identify any error in the court's ruling.

I

FACTS AND PROCEDURAL HISTORY

A. *The Prior Proceedings*

This court has issued three opinions, one published, involving Nguyen and Ribal's representatives. We draw our facts from the record in this appeal and these prior opinions: *In Re Domestic Partnership of Ribal and Nguyen* (Mar. 4, 2015, G049594) [nonpub. opn.] (*Nguyen I*); *In Re Conservatorship of Ribal* (Sept. 28, 2016, G052668) [nonpub. opn.] (*Nguyen II*); and *Conservatorship of Ribal* (2019) 31 Cal.App.5th 519, 521 (*Nguyen III*).

Ribal and Nguyen met in the 1970's. At that time, Ribal was married with two children. Ribal and his wife separated in 1983, and they later divorced. That same year, Nguyen moved into Ribal's home. However, Ribal and Nguyen kept their respective financial assets and accounts separate. Our prior opinions outline evidence showing Ribal's mental capabilities began to severely decline in the late 2000s and early

2010s.  For example, the trial court in *Nguyen II* relied on expert testimony showing Ribal lacked the ability to care for himself or handle financial matters by January 2010.

In January 2010, Ribal and Nguyen filed a declaration of domestic partnership.  Ribal's two children, Laura Tiano and David Ribal, filed a petition in April 2012 to annul the domestic partnership.  Following trial, Judge Glenn Salter granted their petition on grounds Ribal lacked legal capacity in January 2010 to enter into a domestic partnership.  This court affirmed the annulment in *Nguyen I*.

Then, in February 2014, Linda Rogers, the former conservator of Ribal and his estate (the conservator), filed a petition against Nguyen in probate court.  She sought return of Ribal's property and damages for financial and physical elder abuse based on acts occurring in early 2010 through early 2012.  A trial on this petition was held before Judge Geoffrey Glass in December 2014.  Following trial, the court concluded "Ribal was incapable of caring for his or her property or transacting business or understanding the nature or effects of his or her acts from at least the 1st of January 2010 onward."  It found Nguyen liable for financial and physical elder abuse and entered judgment against him.  The minute order granting the petition stated Nguyen owed the conservator $79,991 in reimbursement for (1) rent Nguyen failed to collect from one of Ribal's tenants; (2) unauthorized credit card purchases; (3) unauthorized ATM withdrawals; and (4) unauthorized checks.  The court doubled the amount of the reimbursement (i.e., $159,982) as a penalty under Probate Code section 859, and it awarded an additional $20,000 to the conservator for personal injury damages.[1]  The minute order stated the total award against Nguyen was $179,982.

The entered judgment, however, was not as precise in explaining the total amount awarded against Nguyen.  Like the minute order, it required Nguyen to pay

---

[1] *Nguyen III* omitted the number of cents for the sake of expediency.  We continue that practice in this opinion.  We also note that all further undesignated statutory references are to the Probate Code.

$20,000 in personal injury damages to the conservator. It also provided that Nguyen "must return [$79,991 in] assets" and specified the specific sums to be returned. But, in a separate paragraph, it stated Nguyen "shall pay double damages in the amount of $159,982 to [the conservator]." The judgment did not specify whether this $159,982 sum was in addition to the $79,991 Nguyen was ordered to return or whether it subsumed that amount. Nor does the judgment expressly state the total amount awarded against Nguyen. While this court affirmed the merits of the judgment in *Nguyen II*, it did not address the possible ambiguity in the amount awarded. Rather, this issue became the focus of *Nguyen III* and is also central to Nguyen's arguments in this appeal.

Following *Nguyen II*, Nguyen believed the judgment was in the amount of $179,982 and paid it off. But the conservator argued a $259,973 judgment had been entered against Nguyen and continued attempts to collect the judgment after Nguyen asserted it had been satisfied. (*Nguyen III*, *supra*, 31 Cal.App.5th at pp. 522-523.) The conservator's calculation was based on the ambiguity described above and an interpretation of section 859 that we later rejected in *Nguyen III*. Under section 859, a person that takes property by way of elder or dependent adult financial abuse is "liable for twice the value of the property recovered." The conservator insisted "that because the last sentence of Probate Code section 859 states that the remedies in that section are 'in addition to any other remedies,' the amount due should be calculated by first assessing the amount of the damages [($79,991)], then doubling the damages [($159,982)] and assessing that amount separately – essentially, 1 + 2 = 3." (*Nguyen III*, at p. 525.) Adding these sums together makes $239,973, which, added to the $20,000 in personal injury damages, equals $259,793. (*Id.* at p. 524.)

The conservator eventually brought a motion for attorney fees incurred while attempting to enforce the judgment after Nguyen believed it to be satisfied. The trial court granted her request for fees and agreed with her interpretation of the judgment. It reasoned, "'Nguyen's position has some support in a Minute Order issued by the trial

4

judge . . . , in which the judge calculated Nguyen's total liability to be $179,982 . . . . However, the actual Judgment entered . . . appears to depart from those earlier calculations, or at least suggests they were ambiguous. The Judgment instead indicates the "Double Damages" of $159,982 . . . were in addition to the "Compensatory Damages" of $79,991 . . . .'" (*Nguyen III*, *supra*, 31 Cal.App.5th at p. 523.)

Nguyen appealed this ruling, leading to this court's opinion in *Nguyen III*, which accepted Nguyen's interpretation of the judgment and reversed the trial court's award of fees. *Nguyen III* found the conservator's "contention unsupported by law. If the Legislature had intended damages to be tripled, it would have written something akin to 'the person shall be liable for [*three times*] the value of the property recovered by an action under this part.' [Citation.] In [the court's] experience, the Legislature knows how to distinguish between double damages and treble damages and has provided for each in numerous contexts. The trial court understood this and awarded double, not treble, damages." (*Nguyen III*, *supra*, 31 Cal.App.5th at p. 525.)

## B. *The Instant Proceeding*

In December 2019, after Ribal had passed away, Nguyen filed a $526,555 creditor claim against Ribal's estate seeking an interest in various assets Ribal had allegedly given him. Ribal's two children, as co-executors of Ribal's estate, demurred to the claim. The court sustained their demurrer on grounds Nguyen's petition was barred by collateral estoppel.

Nguyen filed an amended petition, but the court found it was still barred by collateral estoppel. It explained, "like the Original Petition, the Amended Petition includes numerous factual allegations that appear intended to relitigate issues previously adjudicated against Nguyen in other proceedings. Though Nguyen no longer affirmatively alleges those prior, adverse adjudications with the same level of detail included in the Original Petition, he has not offered explanations for those omissions or

5

pleaded new facts that allow him to escape those prior allegations or the prior adjudications. . . . [¶] Taking those prior allegations into account, together with matters judicially noticed, it appears that Nguyen remains collaterally estopped from pursuing any of his well-pleaded claims against the Executors (i.e. claiming a right to assets in the decedent's estate) because those claims rely on issues previously adjudicated against Nguyen for the same reasons discussed in the order sustaining Executors' demurrer to Nguyen's Original Petition." The court also denied Nguyen leave to amend as he was unable to explain how he could fix his claim. Nguyen now appeals.

## II

## DISCUSSION

### A. *Motion to Dismiss*

Nguyen is self-represented. The executors characterize his briefs as nonsensical and seek dismissal of his appeal because, they contend, it lacks relevant legal analysis, fails to identify any error in the trial court's ruling, and is frivolous. They also seek sanctions on similar grounds. We deny both requests.

"[I]n propria persona litigants, like appellant, are entitled to the same, but no greater, rights than represented litigants. . . . Adherence to [this] important principle[], however, must yield to the even greater principles of providing in propria persona litigants with meaningful access to the courts and of deciding bona fide civil actions on their merits." (*Apollo v. Gyaami* (2008) 167 Cal.App.4th 1468, 1487.) "Canons of the California Code of Judicial Ethics contemplate that judges may take reasonable steps to enable a self-represented litigant to be heard. 'For example, when a litigant is self-represented, a judge has the discretion to take reasonable steps, appropriate under the circumstances and consistent with the law . . . and the canons, to enable the litigant to be heard.'" (*Petrosyan v. Prince Corp.* (2013) 223 Cal.App.4th 587, 594, fn. 3.)

6

We agree Nguyen's briefs are difficult to parse. Still, "it is our role to review the arguments he has attempted to make and evaluate them to the best of our ability based on the record before us." (*Nguyen III*, s*upra*, 31 Cal.App.5th at p. 523.) We also err on the side of ensuring Nguyen is given meaningful access to the courts. Thus, in the interests of justice, we will address Nguyen's intelligible contentions that relate to the order at hand. And though we conclude Nguyen's appeal lacks merit, we do not find it so untenable as to warrant dismissal or sanctions.

## B. *Nguyen's Appeal*

From what we can discern from his briefs, Nguyen primarily argues the trial court wrongly applied collateral estoppel because the executors have unclean hands and have defrauded the court. Due to these factors, he appears to assert the trial court should have exercised its equitable powers and refused to apply collateral estoppel out of fairness. (Citing *Murphy v. Murphy* (2008) 164 Cal.App.4th 376, 398-399 ["'Collateral estoppel is an equitable concept based on fundamental principles of fairness'"].) We are unpersuaded by this argument.

Nguyen's accusations of unclean hands and fraud arise from the conservator's attempts to enforce the elder abuse judgment against him after *Nguyen II*. As set forth above, the conservator incorrectly claimed the judgment against Nguyen was in the amount of $259,973, not $179,982. Nguyen maintains the conservator acted with unclean hands and/or defrauded the court by filing court documents and making other similar representations that Nguyen was responsible for a $259,973 judgment. Though these actions were taken by the conservator, Nguyen argues (without any citation to the record) that the executors and the conservator conspired with each other in making these representations.

Even if we accepted Nguyen's assertion that the conservator and executors deliberately intended to mislead the court with these representations, it is unclear how

7

they relate to Nguyen's $526,555 claim at issue. Nguyen has not explained why these alleged misrepresentations would invalidate the prior rulings denying him an interest in Ribal's assets, which underlie the trial court's application of collateral estoppel. Nor has Nguyen provided any authority showing a court can refuse to apply collateral estoppel based on unclean hands or fraud when the wrongful activity is unrelated to the claim at issue.

Nguyen appears to rely on the disentitlement doctrine to bridge this gap, but he has not shown that this doctrine has any application here. "[T]he disentitlement doctrine prevents a party from seeking assistance from the court while that party is in 'an attitude of contempt to legal orders and processes of the courts of this state.'" (*In re E.M.* (2012) 204 Cal.App.4th 467, 474.) Here, the doctrine appears to have no application since Nguyen, not the executors, is the party seeking relief from the court via his creditor's claim. Nguyen has not demonstrated the doctrine is otherwise applicable.

Besides, we find the factual premise of Nguyen's arguments unconvincing. The conservator's statements regarding the judgment amount are not tantamount to fraud, nor do they warrant application of the unclean hands doctrine (to the extent either has any application here). While we disagreed with the conservator's position in *Nguyen III*, the assertion is not so unreasonable as to demonstrate bad faith or fraud by itself. To start, the text of the judgment can be read to support the conservator's statements. As set forth above, the judgment requires Nguyen to return $79,991 in assets to the conservator. It also separately states Nguyen "shall pay double damages in the amount of $159,982[] to" the conservator. Given these amounts were set forth in different paragraphs and there is no mention that the latter amount subsumes the prior amount, it is not wholly irrational to believe these two sums are separate. Indeed, the trial court in *Nguyen III* agreed with the conservator's position prior to this court's reversal (*Nguyen III*, *supra*, 31 Cal.App.5th at p. 523), indicating the conservator's interpretation of the judgment could be made in good faith.

8

Further, prior to *Nguyen III*, there was case law supporting the conservator's understanding of the judgment. In *Estate of Kraus* (2010) 184 Cal.App.4th 103, the trial court ordered the appellant to return $197,402 that he had misappropriated from his dying sister's bank account. Under section 859, it also ordered him to pay a separate penalty of double that amount, $394,804, to his sister's estate. (*Id*. at pp. 106-107, 109-110.) The Court of Appeal affirmed the trial court's ruling. (*Id*. at p. 119.) Though *Estate of Kraus* did not expressly consider how the penalty under section 859 is calculated, as *Nguyen III* did, it can be read to support the conservator's interpretation of the judgment since it affirmed the trial court's penalty.[2] (See *ibid*.) Given the ambiguity in the judgment and the state of the law during the relevant time period, the conservator's position on the amount of the judgment was not wholly unreasonable.

Finally, Nguyen makes a series of other arguments, including that (1) he should not be held liable for a fall Ribal suffered in October 2011; (2) he is entitled to putative spouse status; (3) the executors intentionally interfered with his expected inheritance; (4) the court lacks jurisdiction to sever the joint tenancy of a property he and Ribal owned in Hawaii; (5) he is entitled to a portion of Ribal's estate under *Marvin v. Marvin* (1976) 18 Cal.3d 660; (6) the conservator violated the California Uniform Fraudulent Transfer Ac; (7) the trial court could have authorized the transfer of estate property under the substituted judgment doctrine; and (8) he should not have been found liable for elder abuse by Judge Glass due to the findings of another trial judge in another

---

[2] We also note that at least one appellate court has disagreed with *Nguyen III's* interpretation of section 859 and agreed with the construction applied in *Estate of Kraus*. (See, e.g., *Estate of Ashlock* (2020) 45 Cal.App.5th 1066, 1076.)

proceeding that Ribal was not incapacitated before 2012.[3]  Nguyen has failed to explain how any of these arguments relate to the court's collateral estoppel analysis, which formed the basis of its order sustaining the executors' demurrer.  Rather, these arguments appear to relate to the merits of prior decisions that have already become final.  As to these arguments, Nguyen has not met his burden of showing error by the trial court.  Thus, we presume the court's order is correct.  (*Singman v. IMDB.com, Inc.* (2021) 72 Cal.App.5th 1150, 1151-1152.)

III

DISPOSITION

The trial court's order is affirmed.  Respondents are entitled to their costs in this appeal.

MOORE, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

SANCHEZ, J.

---

[3]  This proceeding focused on whether Nguyen was entitled to monthly rent payments from a property in Hawaii that he and Ribal bought as joint tenants in 2008 (Nguyen did not contribute any funds to the purchase).  The court, Judge Kim Hubbard presiding, found Nguyen was entitled to monthly rents from May 1, 2013 through November 24, 2014.  In reaching this conclusion, the court rejected the conservator's argument that Ribal lacked capacity to grant Nguyen an interest in the property, finding he was not incapacitated before 2012.  While we can see the dissonance in these two rulings, we cannot address in this case a ruling made in an earlier case that has now become final.

10
