Filed 12/4/24  Marriage of Terry CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Marriage of BOAKE and KELLIE TERRY. | 2d Civil No. B331908 (Super. Ct. No. D398305) (Ventura County) |
| BOAKE TERRY,  Respondent,  v.  KELLIE TERRY,  Appellant. | |

This is the second appeal in this case.  Kellie Terry[1] appeals from the order after judgment entered August 17, 2023, disbursing proceeds from sale of the community home, imposing monetary sanctions against her, declining to provide her with a

---

[1] We refer to the parties by their first names for ease of reference.  No disrespect is intended.

copy of a confidential settlement agreement between her former spouse Boake Terry and his former employer, and failing to make further orders regarding disclosure of his income. We reverse the order regarding disbursement of the home sale proceeds and remand for recalculation. In all other respects we affirm.[2]

FACTUAL AND PROCEDURAL HISTORY

The facts upon which the judgment was based are outlined in our opinion in the previous appeal (*In re Marriage of Terry* (Sept. 20, 2023, B321523) [nonpub. opn.] 2023 WL 6138346).

After judgment, the trial court heard Boake's request to disburse funds held in trust representing the balance of the sale proceeds of the couple's house, and his request for sanctions. The court also heard Kellie's request to disclose the settlement agreement of Boake's lawsuit against his former employer (Walmart) and his earnings. The court ordered that $214,232.56 of the trust funds from the sale of the house be distributed to Boake and $24,057.93 be distributed to Kellie. The court ordered Kellie to pay Boake sanctions of $5,890.75. The court vacated its previous order that Kellie be given a copy of the settlement agreement. The court found the previous order regarding disclosure of Boake's income was adequate.

---

[2] We deny Kellie's request for judicial notice. Item 1, the notice of completion of transcripts on appeal and the receipt for record on appeal, is not "helpful toward resolving the matters before this court." (*Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 418.) Judicial notice of the other documents in the request is unnecessary because they are already included in the record on appeal. (*RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co., Inc.* (2020) 56 Cal.App.5th 413, 421, fn. 6.)

## DISCUSSION

### *Standard of review*

" 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *In re Marriage of Obrecht* (2016) 245 Cal.App.4th 1, 8.) But a court's failure to "apply the law to the facts presented . . . constitute[s] a failure to exercise the trial court's discretion. '[A] ruling otherwise within the trial court's power will nonetheless be set aside where it appears from the record that in issuing the ruling the court failed to exercise the discretion vested in it by law.' " (*Fletcher v. Superior Court* (2002) 100 Cal.App.4th 386, 392.)

### *Proceeds from sale of house*

The judgment included an order that Kellie pay Boake $75,600 in "*Watts* credits," representing half the fair market rental value of $5,600 per month during the 27 months she had exclusive use and possession of the house after the date of separation of December 20, 2019, through the date of the court's calculations, March 25, 2022. (*In re Marriage of Watts* (1985) 171 Cal.App.3d 366, 374.) Offset against this amount were "*Jeffries* credits" of $49,046, representing half the mortgage, homeowners' insurance, property taxes, and homeowners' association (HOA) fees paid by Kellie. (*In re Marriage of Jeffries* (1991) 228 Cal.App.3d 548, 552-553.) Kellie was also ordered to continue paying the mortgage, taxes, and insurance during her sole possession of the house.

After judgment, the house sold for $1,165,000. After paying off loans on the property, unpaid property taxes, HOA fees, and

3

other charges, the escrow company distributed $200,000 each to Boake and Kellie. The balance of the proceeds of $238,290.49 was held in trust.

Boake later moved to disburse the trust funds. He requested they be split equally but adjusted to require Kellie to pay various amounts including credits and reimbursements ordered in the judgment; *Watts* credits; unpaid mortgage, property tax, and HOA installments; costs associated with the sale of the house; and five previously ordered sanctions.

Boake submitted a table outlining how to distribute the funds held in trust. Additional *Watts* credits to Boake were calculated as one half of: the fair market rental value for April 1, 2022, through February 15, 2023, less monthly mortgage payments, property taxes, insurance, and HOA fees that Kellie was to pay.[3] Boake also stated that Kellie had not paid the January and February 2023 monthly mortgage installments of $2,661, property taxes of $4,883.25 and $8,391.62, and HOA fees of $1,587.50 and $145.

The trial court adopted Boake's calculations. These calculations reduced Kellie's share of the proceeds, and increased Boake's share, by $20,329.37, representing the full amount of the missed January and February mortgage payments and unpaid property taxes and HOA fees.

---

[3] Boake's table listed these *Watts* credits as $10,332, calculated as: "Monthly mortgage $2,661; Insurance $175; Property Tax $661, HOA $135. Total is $3,632. [Fair market rental value] is $5,600, less $3,632 = $1,968. (50% of $1,968 is $984[.]) Respondent owes $984 to Petitioner each month for Watts credits. (10.5 months)." No error has been shown regarding these calculations.

Kellie contends the division of property from the funds held in trust was erroneous. At our request, the parties submitted supplemental briefs regarding whether the trial court properly ordered Kellie's share of the proceeds of the sale of the house be decreased, and Boake's share be increased, by the entire amount of the unpaid mortgage payments, property taxes, and HOA fees. We conclude the court erred.

"Under [Family Code] section 2550, the court must divide the community estate of the parties equally. In this regard, the court has broad discretion to determine the manner in which community property is divided and the responsibility to fix the value of assets and liabilities in order to accomplish an equal division." (*In re Marriage of Duncan* (2001) 90 Cal.App.4th 617, 631-632.) In its original judgment, the court properly exercised its discretion by ordering Kellie to pay *Watts* credits for half the fair market rental value of the home, offset by *Jeffries* credits for half the mortgage, homeowners' insurance, property taxes, and homeowners' association (HOA) payments she made, and that she continue to pay the mortgage, taxes, and insurance after judgment because of her sole use of the community home. But there is no evidence the court exercised its discretion when it changed that apportionment when it ordered Kellie to assume all community obligations for the community home for the period she continued to occupy the home after entry of judgment.

In reviewing an order for abuse of discretion, an "appellate court 'need not shrink' from correcting errors in methodology or calculation." (*Children & Families Com. of Fresno County v. Brown* (2014) 228 Cal.App.4th 45, 58.) " ' "[W]e must pay ' "particular attention to the trial court's stated reasons . . . and [see] whether it applied the proper standards of law in reaching

5

its decision." ' " ' " (*Ibid.*; see *In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 526-528 [reversing spousal support order based on erroneous factors].) The trial court here said nothing to explain why it deviated from its previous allocation of costs. Instead, the trial court simply adopted an erroneous calculation. That must be corrected because the mortgage, property tax, and HOA payments were community debts. " ' "[A] spouse who, after separation of the parties, uses earnings or other separate funds to pay preexisting community obligations should be *reimbursed therefor out of the community property* upon dissolution." ' " (*In re Marriage of Jeffries, supra*, 228 Cal.App.3d at p. 552, quoting *In re Marriage of Epstein* (1979) 24 Cal.3d 76, 84; Fam. Code, § 2640, subd. (b).) Because Kellie was ordered to use her own funds to pay for community obligations arising from the community home (mortgage, property taxes, and HOA fees), Boake's share of the trust funds should not have been increased by the total amount. A spouse is responsible for reimbursing the other spouse half, not all, of community obligations. (*In re Marriage of Oldfield* (1979) 94 Cal.App.3d 259, 263.)

If Kellie had paid the January and February mortgage installments and the property taxes and HOA fees, those payments would have decreased the balances of the encumbrances on the house and accordingly increased the community's equity in the house. One-half of her mortgage, property tax, and HOA payments would have benefited her and one-half would have benefited Boake. But her failure to make the payments increased the amount the escrow company had to pay the lender, tax collector, and HOA, and decreased the net proceeds to be divided between Kellie and Boake. When dividing the balance of the sale proceeds, the court should have in effect

6

made her belatedly pay the community by increasing Boake's share by the 50 percent of the payments that would have benefited him, and decreasing Kellie's share by the same amount.

Boake contends that Kellie had already been given credit for her half of the unpaid amounts in the *Watts* and *Jeffries* calculations. But those calculations assumed that she made the required payments to the lender, tax collector, and homeowners' association on behalf of the community, not that she pay Boake the full amounts. The calculations gave Kellie credit for her half of the benefit to the community, but because she failed to make the payments, Boake did not get his half. The proper remedy was to compensate Boake for his 50 percent share of the benefit the payments would have made to the community, not that Kellie pay Boake the full amount.

We conclude the trial court erred in ordering Kellie to pay Boake the full amount of the missed January and February mortgage payments, property taxes, and HOA fees, rather than his 50 percent community property interest in those amounts. We remand to the trial court to calculate the correct adjustments for the missed payments.

As to the remaining portions of the order regarding distribution of the funds held in trust, no error has been shown because the court's "determination is within the range of the evidence presented." (*In re Marriage of Duncan*, *supra*, 90 Cal.App.4th at p. 632.)

### Sanction

The trial court previously ordered that Kellie pay five monetary sanctions to Boake. (Fam. Code, § 271, subd. (a).) The order after judgment included an additional $5,890.75 sanction against her. This sanction reimbursed Boake's attorney's fees to

7

respond to Kellie's delaying the home sale by staging a phony water leak, refusing to leave the residence when escrow closed, and refusing to sign the deed or escrow documents, which required Boake get a court order appointing an elisor[4] to sign.

A sanction of attorney's fees and costs is properly imposed where a party's conduct frustrated settlement of litigation and increased litigation costs. (Fam. Code, § 271, subd. (a).) We review the imposition of sanctions for abuse of discretion and do not reverse "unless, considering all the evidence viewed most favorably in support of the order and indulging all reasonable inferences in its favor, no judge could reasonably make the order." (*In re Marriage of Rangell* (2023) 95 Cal.App.5th 1206, 1218.) As in *Rangell*, sanctions against Kellie were warranted based on her disregard of the trial court's orders, including unreasonably impeding sale of the house. (*Id.* at p. 1220.)

*Serrano v. Unruh* (1982) 32 Cal.3d 621, upon which Kellie relies, addresses statutory attorney fees in public interest cases (Code Civ. Proc., § 1021.5) rather than sanctions in family law cases (Fam. Code, § 271). Moreover, she has not shown that the sanction was "unjust," "unreasonably inflated" or "outrageously unreasonable." (*Serrano*, at pp. 633-635.)

Kellie contends the sanction improperly "imposes an unreasonable financial burden" on her. (Fam. Code, § 271, subd. (a).) We are not persuaded. She had already received $200,000 from the sale of the house, and the sanctions were deducted from her share of the balance of the proceeds. (See *In re Marriage of*

---

[4] An elisor is a person appointed by the court, in this case a court clerk, to sign a deed or document on behalf of a recalcitrant party. (*Blueberry Properties, LLC v. Chow* (2014) 230 Cal.App.4th 1017, 1020-1021.)

*Rangell*, *supra*, 95 Cal.App.5th at p. 1224 [sanctions not unreasonable burden in light of party's share of rental income and sale proceeds].)

The trial court properly exercised its discretion when it ordered Kellie to reimburse Boake for the attorney's fees he incurred as the result of her unreasonable conduct.

*Walmart settlement*

Kellie contends Boake failed to provide documentation of the Walmart settlement. The trial court did not err by initially allowing Kellie to see the settlement agreement, but later vacating the order that she receive a copy after Kellie disclosed its confidential terms.

In the judgment, the trial court reserved jurisdiction over any community interest in the lawsuit, which was still pending. The lawsuit was later settled, subject to a confidentiality agreement.

On February 28, 2023, the trial court ordered that Kellie view the settlement agreement but not copy it or discuss its terms. She viewed the agreement in the courtroom but refused to return it, requiring the bailiff to obtain it from her.

On June 27, 2023, the court ordered Boake's counsel to provide Kellie with a copy of the settlement agreement, subject to the limitation that "[i]t may not be disclosed to a third party other than [her] retained counsel." But after receiving a copy, Kellie recited the terms of the agreement in open court. She attempted to justify her conduct by stating it was not the actual agreement because it was only signed by Boake, and the amount of his bank deposits could only be possible if he reached a different settlement with Walmart. The court then ordered Kellie to return the copy and vacated the order that Boake's

9

attorney provide her a copy.

"Every court shall have the power" "[t]o compel obedience to its judgments, orders, and process," and "[t]o amend and control its process and orders so as to make them conform to law and justice." (Code Civ. Proc., § 128, subd. (a)(4) & (8).)

Unlike *In re Marriage of Mohammadijoo and Dadashian* (2024) 102 Cal.App.5th 392, upon which Kellie relies, Boake did not fail to disclose the settlement. His counsel twice provided Kellie with copies of the agreement, subject to its confidentiality terms. Kellie's claim that these documents were "fake" is not established by the record.

Based on Kellie's violation of the confidentiality order, the trial court properly vacated its order that she receive a copy of the settlement agreement.

## Ostler-Smith *income*

The judgment required that Boake pay Kellie 10 percent of his annual salary over $70,000. (*In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33, 37.) The court ordered that Boake provide Kellie with his earning statements quarterly and give her ongoing updates of additional bonuses or raises.

Kellie represented that Boake failed to disclose his income for the quarters ending June, September, and December 2022. She sought disclosure and attorney's fees. (Fam. Code, § 271.) Boake's counsel declared that Boake did not receive any bonuses or raises above his base salary from April through December 2022, and Kellie was provided quarterly statements for that period. Counsel told the court Kellie received the *Ostler-Smith* payment for 2023.

"[I]t is well established that the trial court weighs the evidence and determines issues of credibility and these

10

determinations and assessments are binding and conclusive on the appellate court." (*In re Marriage of Hill & Dittmer* (2011) 202 Cal.App.4th 1046, 1051-1052.) The court here found the *Ostler-Smith* requirements were addressed in the judgment, and no further orders were required. No error has been shown.

*Issues previously resolved*

Kellie challenges aspects of the original judgment and first appeal, including but not limited to purported inaccuracy of the evidence considered, distribution of retirement benefits, spousal support, child support, and our partial denial of her motions to augment the record. The current appeal of an order after judgment is not a vehicle to reconsider our affirmance of the judgment. (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 651.)

*Other issues*

Kellie represented herself during portions of the trial court proceedings and represents herself on appeal. We agree that self-represented litigants are entitled to the same respect and application of the same law as those represented by counsel. (See *Petrosyan v. Prince Corp.* (2013) 223 Cal.App.4th 587, 594.) But Kellie has not shown she was treated otherwise.

Kellie contends a proposed stipulated agreement written by the parties' counsel did not protect her interests. We review the order after judgment following trial and not the terms of a proposed settlement that was never entered.

Kellie's briefs make numerous assertions that are not supported by citation to the record or legal authority, not developed with legal argument, and/or not identified as issues under separate headings or subheadings. (Cal. Rules of Court, rule 8.204(a)(1)(B) & (C); *Allen v. City of Sacramento* (2015) 234

Cal.App.4th 41, 52.) These arguments are forfeited. (*Ibid*.)

We decline to consider issues raised for the first time in appellant's reply brief, including that in-chambers communications with counsel without the presence of the clients was improper, and that the trial court was influenced by "implicit bias." "Basic notions of fairness dictate that we decline to entertain arguments that a party has chosen to withhold until the filing of its reply brief, because this deprives the respondent of the opportunity to address them on appeal." (*In re Groundwater Cases* (2007) 154 Cal.App.4th 659, 693.)

DISPOSITION

The order after judgment entered August 17, 2023, regarding the distribution of trust funds from the sale of the house is reversed and remanded for recalculation. The order after judgment is otherwise affirmed. Appellant shall recover her costs on appeal.

NOT TO BE PUBLISHED.

BALTODANO, J.

We concur:

GILBERT, P. J.

YEGAN, J.

12

Michael S. Lief, Judge

Superior Court County of Ventura

_____

Kellie Terry, in pro. per., for Appellant.

Ferguson Case Orr Paterson and Wendy C. Lascher for Respondent.